CONSOLIDATED FUEL CO. v. ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS.

(Circuit Court of Appeals, Eighth Circuit. April 2, 1918.)

No. 5021.

SPECIFIC PERFORMANCE ☞68—PERSONAL PROPERTY—ADEQUATE REMEDY AT LAW.

A federal court of equity is without jurisdiction of a suit by a railroad company for specific enforcement of a contract for the sale and delivery of the coal required in the operation of its road during a specific time, in the absence of allegation of the insolvency of defendant, or that the coal cannot be obtained from others; there being a plain and adequate remedy at law by an action for breach of the contract.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by the St. Louis Southwestern Railway Company of Texas against the Consolidated Fuel Company. From an order granting a preliminary injunction, defendant appeals. Reversed, and case ordered transferred to law docket.

Edward R. Jones, of Muskogee, Okl., and Ephraim H. Foster, of Oklahoma City, Okl. (Maxwell C. Katz, of New York City, on the brief), for appellant.

E. B. Perkins, of Dallas, Tex. (Daniel Upthegrove, of St. Louis, Mo., Clifford L. Jackson, of Muskogee, Okl., and W. B. Hamilton, of Dallas, Tex., on the brief), for appellee.

Before HOOK, CARLAND, and STONE, Circuit Judges.

CARLAND, Circuit Judge. The appellant has appealed from an order overruling a motion to dismiss the complaint and an order granting a temporary mandatory injunction. The former, not being final, is not appealable, and that appeal is therefore dismissed.

The action was brought by appellee to obtain the specific performance of a contract for the sale and delivery of coal. At the hearing of the order to show cause why a temporary injunction should not issue, appellant contended that the court had no jurisdiction of the action sitting as a court of equity, for the reason that the appellee had a plain, adequate, and complete remedy at law (section 267, Judicial Code [Act March 3, 1911, c. 231, 36 Stat. 1163, Comp. St. 1916, § 1244]); and the same contention is made here.

The trial court granted a temporary injunction, enjoining appellant from selling or disposing of its output of coal to such an extent as would render it unable to comply with the terms of the contract hereinafter mentioned, and from refusing to deliver coal to appellee ac-

cording to the terms of said contract. Whether a suitor in an equity action has a plain, adequate, and complete remedy at law must be determined from the facts in each case as it arises. No general rule can be formulated to cover all cases. The facts alleged in the complaint in the present case are substantially as follows:

Appellee is a railroad corporation, owning and operating certain lines of railroad in the state of Texas, and is engaged in intrastate and interstate commerce. Its engines are equipped for burning coal, and no other fuel. In order to obtain coal for locomotive and shop use on October 12, 1916, appellee entered into a contract with appellant whereby the latter agreed to sell and deliver to appellee machine-mined fuel coal suitable for locomotive and shop use from mines located at or near Dewar, Okl., in such quantity as appellee might require for use on its lines during the period from August 1, 1916, to July 31, 1918, estimated at 550,000 tons. By the terms of the contract appellee agreed to pay appellant for all coal delivered and accepted $1.77½ per ton. Appellant agreed not to assign or sublet the contract, or any part thereof, without the consent of appellee. Both parties complied with the terms of the contract up to about June 7, 1917, when appellant served notice upon appellee that it would discontinue the loading and delivering of coal under the contract after June 7, 1917, and appellant has not furnished any coal under said contract since said date, to the damage of appellee as alleged in the sum of $5,000.

The complaint also alleged upon information and belief that it was practically impossible to purchase the character of coal described in the contract, or the character of coal necessary for the consumption of appellee in the operation of its trains, except at a large and unreasonable advance, which advance would not be less than 72½ cents per ton, and this advance would aggregate on the coal due under the contract the sum of $300,000. To this sum would be added any future advance in wages allowed to miners. To show that the demands upon appellee for the transportation of commerce, state and interstate, were great and increasing, the complaint set forth an agreement of the railroads of the United States, made at the request of the Council of National Defense, that the railroads would co-ordinate their operations in a continental railway system, in order to produce a maximum of national transportation efficiency. There was also pleaded and attached to the complaint as an exhibit a circular issued by the special committee of the American Railway Association, giving the information that said special committee had ordered all railroads of the United States to give coal and iron ore preference over all other traffic.

The complaint further alleged that if appellant should fail and refuse to deliver coal in accordance with the terms of said contract, and thereby interfere with the operation of appellee's trains, appellee would thereby be subjected to irreparable loss and damage in a large amount, to wit, as it believed, in the sum of $100,000, and would be subjected to a multiplicity of suits for damages and penalties, as provided for under the laws of the state of Texas and under the decisions of the courts of said state, and as provided for under the laws of the United States and established by the decisions of the courts of the

United States; that appellee believed, and is so advised, that its officers and agents might be subjected to a multiplicity of prosecutions under the laws of the state of Texas and under the laws of the United States for its failure to receive and transport freight, passengers, mail, and express, as required by said laws governing state and interstate transportation and commerce; that appellee has a very large number of employés engaged in the operation of trains in the railroad service, approximately as follows:

Engineers ............................................................. 81
Firemen .............................................................. 91
Conductors ........................................................... 94
Brakemen ............................................................. 125

Total ........................................................... 391

In addition thereto, it has a large number of employés engaged in other departments in the operation of its lines of railway, aggregating an average of 3,000 in number; that practically all of said employés are dependent upon the wages paid to them by appellee for the support of themselves and families. The complaint then set forth the number of passengers carried during the year ending June 30, 1914, the tons of freight transported during said year, and the amount of revenue received for transporting passengers and freight during said year, and similar allegations are made for the years ending June 30, 1915, and June 30, 1916; that the transportation of freight and passengers for the year ending June 30, 1917, would be much larger than other years; and that if appellee is prevented from operating its trains, or the operation thereof is seriously interfered with, by being unable to obtain coal, then its patrons and the public, including the United States government, will be seriously discommoded and hampered in the conduct of their business.

The complaint then alleged that if appellee should be prevented from transporting passengers and freight, or if it should be compelled to stop the operation of its trains, or any considerable number of its trains, by reason of appellant's failure to comply with said contract, appellee would be irreparably damaged and deprived of its property, for the reason aforesa'd, to an amount that could not be estimated with accuracy, but which in appellee's opinion would not be less than $300,000. The complaint alleged that appellee was not advised with certainty as to the financial ability of the appellant to respond in damages, but that it was doubtful if appellant, or any other similar coal company, could respond to appellee in damages, so as to compensate appellee for the amount of the injury that it would suffer, or anything like the amount; and it further alleged that it would be a legal impossibility, in the opinion of appellee, for appellant to respond to the damages that it would inflict by a breach of this contract upon the public and patrons of appellee and upon the government of the United States, and that in the opinion of appellee such damages are not ascertainable, and could not be recovered from appellant by proceedings at law.

It was also alleged in the complaint that at the time the contract was made there were a number of reliable and trustworthy persons,

firms, and corporations from whom appellee could have purchased coal on as good terms as the terms under which it purchased the same from appellant, and with whom appellee could have entered into a contract as advantageous to it as the contract in controversy, but that said contract was entered into at the earnest solicitation of appellant, and with its full knowledge, agreement, and consent. The complaint further alleged upon information and belief that appellee was one of the largest patrons of appellant, and purchased and received from appellant a large percentage of the coal mined and produced by it; that appellant was threatening to dispose of its output of coal to other parties, thereby rendering it impossible for appellant to deliver coal in accordance with its contract to appellee, and that unless appellant is prevented from so doing, by injunction or some other process, it will so sell and dispose of its output of coal to parties other than appellee, and appellant will fail and refuse to deliver to appellee the coal required by appellee during the balance of the term of said contract, unless required so to do by injunction or some other process proper in the premises; that appellee had no adequate remedy at law for the wrongs and injuries of which it complains.

So far as war conditions are concerned, and in so far as such conditions may affect the question now under consideration, we presume we may also take judicial notice that the government of the United States has since the commencement of this action taken over the management of the railroads of the country; but we think the government's connection with the case, if it has any, cannot affect the decision of the question as to whether appellee has a plain, adequate, and complete remedy at law. If the government itself was here complaining in this case, it would be bound by the same rules of procedure, so far as the question now under consideration is concerned, as appellee. Moreover, the government under the war power can get all the coal it wants, without the consent of any one; so we need not be over-anxious about the government. There is no allegation in the complaint that the appellant is insolvent, and insolvency is a very material question in cases where the damages in money are easily ascertainable. In the present case it is directly alleged in the complaint that at the time the contract was entered into appellee could have made just as good a contract with a good many other persons and companies who had coal for sale, and that it can now get the coal it wants by paying an increase of price of 72½ cents per ton. After all that has been said by the courts as to what is, or what is not, an adequate remedy at law in the numerous cases which have been considered, the Seventh Amendment to the Constitution of the United States, preserving the right of trial by jury in actions at law where the value in controversy exceeds $20, and the language of the Judiciary Act of 1789, now known as section 267 of the Judicial Code, still stand, and there still is a fundamental distinction in the jurisprudence of the United States between actions at law and actions in equity. The present case is not in the twilight zone. The light that shines is not from the crescent, but from the full orb of never-fading light.

The case stated in the complaint is simply one where appellant has

breached a contract for the sale and delivery of coal to a common carrier. The measure of damages for such breach would be the difference between the contract price and the market price of coal at the nearest market, with the cost of transportation to the point where appellant agreed to deliver the coal. The allegations of the complaint in regard to the damages that would result to the people of Texas and of the United States, including suits and prosecutions for penalties, and the damages to employés, if appellee should cease operating its trains for want of coal, present a contingency so remote and impossible as to be negligible, and the people referred to are not complaining. We have been unable to find any authority that would allow a common carrier to go into a court of equity to obtain specific performance of such a contract as is involved in this action. To take jurisdiction in equity of the case made by the complaint would be to destroy all distinction between actions at law and in equity. If we shall take jurisdiction in this case, and specifically enforce a contract for the sale and delivery of coal, where could we stop? The next contract presented for us would be for the sale and delivery of engines, for the sale and delivery of railroad ties, for the sale and delivery of cars, or for the sale and delivery of a thousand other articles, which go to make up the equipment of a railroad. The contract price of coal is fixed; the market price of coal and cost of transportation is easily shown; why should equity assess the damages? It was decided by this court in the case of Texas Co. v. Central Fuel Oil Co. et al., 194 Fed. 1, 114 C. C. A. 21, that a contract relating to personal property may be specifically enforced in equity where the property is such that it cannot be obtained in the market, or only at great expense and inconvenience, and the failure to obtain would cause damage to complainant, which could not be adequately compensated in an action at law; but the case cited is no authority for sustaining the jurisdiction of a court of equity in the present case. Having no jurisdiction in equity, we may not discuss the merits of the order granting the temporary injunction.

The order granting a temporary writ of injunction is reversed, and the case remanded, with directions to transfer the case to the law docket, there to be proceeded with under the provisions of section 274a of the Judicial Code (Comp. St. 1916, § 1251a), subject to the right of appellee to dismiss without prejudice.