### ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. CONSOLIDATED FUEL CO.

(Circuit Court of Appeals, Eighth Circuit. September 1, 1919.)

#### No. 5351.

APPEAL AND ERROR ⬤�िⅆ1208(2)—PROCEDURE BELOW ON REVERSAL OF ORDER.

    A court, which by an interlocutory order made on complainant's motion has required a defendant to deliver property to complainant under a contract, although its order has been reversed, as not within its equity jurisdiction, has power to compel complainant to pay for the property in accordance with the terms of the contracts.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by the St. Louis Southwestern Railway Company of Texas against the Consolidated Fuel Company. From an order of the District Court, complainant appeals. Affirmed.

Daniel Upthegrove, of St. Louis, Mo. (E. B. Perkins and W. B. Hamilton, both of Dallas, Tex., and Clifford L. Jackson, of Muskogee, Okl., on the brief), for appellant.

Ephraim H. Foster, of Muskogee, Okl. (Edward R. Jones, of Muskogee, Okl., on the brief), for appellee.

Before CARLAND and STONE, Circuit Judges, and YOUMANS, District Judge.

CARLAND, Circuit Judge. This case is here both on appeal and writ of error. So far as our right to review the questions properly presented, it is immaterial which is the proper remedy. Section 1649a, Comp. Stat. 1918 (Act Sept. 6, 1916, c. 448, § 4, 39 Stat. 727). An appeal, however, was the proper remedy, and the writ of error No. 5352 will be dismissed.

So far as the filing of the record is concerned the allowance of a second appeal was a compliance with rule 16 of this court (198 Fed. xxiii, 115 C. C. A. xxiii). The order appealed from was a final order. What is called in the record a bill of exceptions may be treated as a statement of the case, as there is no claim that it does not correctly set forth the proceedings which resulted in the order appealed from. Equity Rule 77 (198 Fed. xli, 115 C. C. A. xli). There was no evidence to be reduced to narrative form under rule 75 (198 Fed. xl, 115 C. C. A. xl). The material facts appearing from the record are as follows:

June 13, 1917, the appellant filed its original bill in the court below for the specific performance of an alleged contract with appellee for the sale and delivery of coal during the period from August 1, 1916, to July 31, 1918, at the price of $1.77½ per ton f. o. b. cars Dewar, Okl., payment to be made on or about the 20th day of each month for coal delivered and accepted during the preceding month. Pursuant to the prayer of the bill the court on July 30, 1917, made an order, the material portion of which is as follows:

"It is therefore by the court ordered, adjudged, and decreed that the defendant, Consolidated Fuel Company, be and it is hereby enjoined and restrained, until the further order of this court, from selling or disposing of its output of coal to such an extent as will render it unable to comply with the terms of the contract in controversy herein, entered into between complainant and defendant, and bearing date of October 12, 1916, and from refusing to deliver coal to complainant, according to the terms of said contract, upon complainant's order therefor."

Appellee appealed to this court, but the injunction was not suspended. April 2, 1918, this court reversed the above order, with instructions to transfer the cause to the law docket, there to be proceeded with under section 274a, Judicial Code (Act March 3, 1915, c. 90, 38 Stat. 956 [Comp. St. § 1251a]), subject to the right of the present appellant to dismiss without prejudice. The mandate of this court was filed in the court below July 27, 1918. April 29, 1918, appellee filed in said court an application for an order requiring the appellant to show cause why it should not comply with the order of the court made when the temporary injunction was issued, and why it should not be punished for a failure to comply with the same. This application was verified, and alleged, among other things:

"That defendant, though at all times denying the existence of the alleged contract and under compulsion of the order of injunction issued by this court, has faithfully complied with said order and has since the issuance thereof; and up to and including the week ending April 6, 1918, filed complainant's orders for coal, and delivered to complainant coal from its mines at Dewar, Okl., in quantities aggregating an average of 20,000 tons per month, and has from time to time rendered statements to complainant for the coal so furnished at the then prevailing market price for said coal, f. o. b. cars Dewar, Okl.

"That complainant has refused to pay for said coal at the market price, but has insisted that, under the orders of the court, it was only required to pay for the coal so furnished at the rate of $1.77½ per ton, which amount defendant, under compulsion of said order of injunction, was forced to accept and did accept, but in each instance notified complainant that upon the dissolution of said injunction it would demand the full market price for said coal.

"That complainant, on or about the 20th day of each and every month, subsequent to the issuance of said preliminary injunction, except as hereinafter stated, issued and delivered to defendant its voucher for the coal furnished it during the preceding month at the rate of $1.77½ per ton, which said vouchers were accepted by defendant under compulsion of said order of injunction, and the amount used to defray in part the expense of producing and loading said coal. * * *

"That prior to said decision (April 2, 1918, reversal) defendant had, in compliance with the orders of this court, been furnishing coal to complainant as therein provided, and during the month of March, 1918, furnished and delivered to defendant on board cars at Dewar, Okl., 20,203.25 tons of coal, which at the price of $1.77½ per ton would amount in the aggregate to $35,860.76.

"That under said order of this court complainant was required to issue to defendant its voucher for said amount on or before the 20th day of April, 1918;

but defendant alleges that said voucher has not been issued, and complainant has wholly failed and refused to comply with the order of this court, whereby it was required to remit on or before the 20th day of April, 1918, $1.77½ per ton for all of the coal furnished and delivered it during the preceding month.

"Defendant is informed and believes, and upon such information and belief states the fact to be, that complainant does not intend to comply with the order of this court or to remit the amount which is required by said order for the coal so furnished it by defendant."

On the filing of such application an order was made directing the appellant to show cause May 13, 1917, why the prayer of appellee should not be granted. Appellant appeared and filed an answer. A hearing was had, and the court took the matter under advisement until July 31, 1918, when it issued a notice for counsel to appear on August 7, 1918. A hearing was had on the date last mentioned, and the court found that appellant had received from appellee coal for the months of March and April, 1918, which at contract price amounted to $40,379.54, and ordered the appellant to pay said amount to appellee within 10 days, whereupon appellant appealed from the order thus made. It is first claimed that the lower court had no jurisdiction to make the order, as this court had decided (250 Fed. 395, 162 C. C. A. 465) that it had no jurisdiction as a court of equity over the cause, and therefore no power existed to do anything more than to transfer the same to the law docket. This contention, however, ignores an important principle of law. The lower court, on request of appellant, had unlawfully compelled the appellee to deliver the appellant coal which at the contract price amounted to the sum heretofore stated, and this action of the court was induced on the statement of appellant that it was willing to pay the contract price. It would be a grave reproach to the administration of justice if, when a court has wrongfully taken the property of one party and given it to another, it should be powerless to make restitution. The law is otherwise. In Northwestern Fuel Co. v. Brock, 139 U. S. 216, 11 Sup. Ct. 523, 35 L. Ed. 151, it was stated:

"But here the jurisdiction exercised by the court below was only to correct by its own order that which, according to the judgment of its appellate court, it had no authority to do in the first instance; and the power is inherent in every court, whilst the subject of controversy is in its custody and the parties are before it, to undo what it had no authority to do originally, and in which it therefore acted erroneously, and to restore, as far as possible, the parties to their former position. Jurisdiction to correct what had been wrongfully done must remain with the court so long as the parties and the case are properly before it, either in the first instance or when remanded to it by an appellate tribunal. * * * We are of the opinion that the proceeding to enforce the restitution in the cases mentioned is under the control of the court, and that all needed inquiry can be had to guide its judgment in a summary proceeding, upon motion of the parties; the only requisite being that the opposite party shall be heard, so that in directing restitution no further wrong be committed. The restitution is not made to depend at all upon the question whether or not the court rendering the judgment reversed acted within or without its jurisdiction."

This rule was affirmed in the recent case of Arkadelphia Milling Co. v. St. Louis S. W. Ry. Co., 249 U. S. 134, 39 Sup. Ct. 237, 63 L. Ed. 517, and cases cited. The contention made has no merit. On the

day of the last hearing appellant admitted that it had received from appellee coal for the months of March and April, which at the contract price amounted to the aggregate sum of $40,379.54, and asked the court, if it should be refused the right to retain said sum, for permission to pay the same into the registry of the court, to be there held as security for the payment of any damages appellant might recover from appellee in an action at law for its failure to comply with its contract. Under the circumstances this was a remarkable request, and wholly ignored the rights of the appellee. It would have been beyond the power of the court to make any such order, and the request is so far wanting in merit that discussion fails for want of a subject.

It is next contended that the order of the court was an unlawful interference with the possession, use, and control by the United States government of the property of the railway company. It is sufficient to dispose of this contention by observing that, if the United States themselves had filed the original bill and obtained the injunction, they could not be heard to object to the payment of this money. The objection is also somewhat inconsistent with the offer to deposit the money in court. No one representing the United States Railroad Administration appears to object. Moreover, section 10 of the Act of March 21, 1918, c. 25, 40 Stat. 456 (Comp. St. 1918, § 3115¾j), providing for the operation of transportation systems while under federal control, reads in part:

"Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government."

It is next contended that the trial court erred in refusing to allow the appellant to file its supplemental answer. The statement of the case shows what that answer alleged, and no point is made therein other than those that have been discussed. As these have no merit, no error was committed in refusing permission to file the same.

The order below is affirmed, with costs.