### FULLER v. GILMORE et al.

#### (Circuit Court, S. D. New York. December 23, 1902.)

1. PATENTS—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

The rule of practice that a preliminary injunction will not be granted against infringement of an unadjudicated patent, unless long acquiescence is shown, applies only in cases where there is some question as to the validity of the patent. When it appears to be novel, useful, and ingenious, and there is no evidence at all assailing its validity, or where the evidence of the prior art is wholly unpersuasive, the presumption arising from the issue of the patent is sufficient to warrant injunctive relief.

2. SAME—STAGE APPLIANCE.

The Fuller patent, No. 643,493, for a stage appliance to simulate a fire, *held* valid, on a motion for a preliminary injunction.

In Equity. Suit for infringement of letters patent No. 643,493, for a stage appliance, granted to Ida M. Fuller November 10, 1899. On motion for preliminary injunction.

Clifton V. Edwards, for the motion.

Louis C. Raegener, opposed.

LACOMBE, Circuit Judge. Suit is brought to enjoin infringement of complainant's United States letters patent for a theatrical appliance —No. 643,493; February 13, 1900; application filed November 10, 1899. The claims relied on are:

"(1) In stage appliances, an open-work base, streamers attached to said base, and means for directing currents of air to the base and for illuminating streamers through the base.

"(2) In stage appliances, a foraminated structure, streamers connected thereto, fans beneath the foraminated structure, arranged to concentrate air-

currents thereon, and an illuminating device, the delivery whereof is directed to the aforesaid foraminated structure."

By this appliance, as the specifications point out, "the effect of a fierce fire may be produced upon a stage, or wherever else desired, without the possibility of injury to the surroundings, or to any person appearing to be in the midst of the flames and apparently handling the tongues of fire, or moving in close proximity thereto." "The stage is provided with an opening, at which opening a gridiron or screen is secured, serving as a partial cover for said opening." Strips of a translucent or a transparent fabric are fastened at their lower ends so as to come over the meshes of the gridiron. They are "preferably tapering, although they may be given any desired shape." They are of colors approximately the color of flame, are entirely free above the point to which they are attached, and are capable of waiving, fluttering, or curling when subjected to a suitably directed blast of air. This blast of air is produced through the medium of fans, whose position may be changed as may be found necessary to direct the streamers in a proper direction. The streamers are placed sufficiently close together to collectively form a column or volume of strips when the strips are under the influence of the air-supply, but the spaces between the said strips are sufficiently great to permit each individual strip to wave independently in front of or at the back or side of an adjacent strip. The illusion of fire is produced by directing rays of light upward through the screen or gridiron, and upon and through the mass of waving strips. Various colors or shades of color may be imparted to the light supplied to the strips or streamers, thus indicating the changes of colors in a leaping flame. The effect of sparks is obtained by introducing small bits of paper, cardboard, or the like, suitably colored, between the currents of air and the screen or gridiron, whereupon the said currents of air will carry these small pieces of colored material up through the meshes of the gridiron, and as soon as they are freed from the influence of the air blast the said pieces will fall to the stage, where their smooth surfaces and glittering color will continue to sparkle when the light is turned on or changed on the screen.

Defendant calls attention to the circumstance that the patent has never been adjudicated, and is of such recent date that long acquiescence cannot be shown, as sufficient ground for refusing preliminary injunction. The practice referred to is followed in this circuit, but only in cases where there is some question as to the validity of the patent. When the specification shows that, assuming facts of common knowledge, it will probably need some affirmative evidence to indicate the presence of invention, or when some testimony put in by defendant as to the prior state of the art, slight though it be, indicates that there may be some arguable question as to validity, or as to a construction of the claims broad enough to cover the device complained of, then preliminary injunction on affidavits is refused. But where the patent appears to be novel, useful, and ingenious, and there is no evidence at all assailing its validity, the presumption arising from issue of letters patent will be sufficient to warrant injunctive relief. The same rule should apply where the sole evidence as to prior art is wholly unpersuasive.

It seems manifest from the patent itself that the device of complainant must produce a highly realistic simulation of a raging fire. The avidity with which it has been seized upon by defendants and by others confirms this inference. It is common knowledge that those who produce theatrical representations are solicitous to effect such simulations. For years it has undoubtedly been a desideratum to find appliances which would impress an audience with a belief that they were looking at a real fire, and at the same time be wholly without risk of causing a conflagration. Other appliances have been tried for years, some more effective than others, but never before, so far as the record shows, has the illusion of leaping flames been effected by a combination of colored streamers, an air blast, and appropriately applied illumination. In the device employed by an earlier "fire dancer," which was before this court in Fuller v. Bemis, 50 Fed. 926, the waving draperies of the performer, agitated solely by her own movements, were illumined, as in the device in suit, by colored lights cast up from beneath the stage; but there was no air-blast, the aperture for light being covered with a plate of glass. An English patent to Plunkett (No. 24,807 of 1893) describes apparatus for producing "an effect of dancing upon water or in space." A mirrored floor is employed, properly lit and curtained; and, when wind effects are desired, air is introduced at the side of the apparatus, "blown in upon or underneath the drapery of the dancing figure, so as to give a floating effect in space. This air will, for preference, be warm, and forced in by gentle pressure through the agency of a descending cylinder, with a weight attached." All these appliances are very far removed from that of the patent in suit, and the circumstance that during the years since they were introduced they indicated to no one the complainant's method of securing an effective and safe simulation of fire, while during the same period representations of a conflagration were being constantly produced on the stage, is most persuasive as to the patentable invention involved in complainant's simple, effective, and ingenious appliance.

The patents to Sherwood (661,426) and to Carter (662,708) are both subsequent to complainant's; the respective dates of application being July 31, 1900, and January 22, 1900. There is no evidence produced on this motion of knowledge and use prior to the date of complainant's application, and the circumstance that one or both of the subsequent patentees last above named has brought or threatened suit against defendant is no answer by him to the present application. Infringement is entirely clear, and a preliminary injunction should issue. In view of the circumstance that defendants have invested a great deal of money in the production of a play in which the representation of a raging fire is a prominent feature, a reasonable time should be allowed them to substitute some of the earlier appliances for those of the complainant as the means of producing such effect. The operation of the injunction will therefore be suspended 10 days from the signing of the order. This decision is without prejudice to a motion to dissolve the injunction should defendant be able to produce any prior patents or publications which may indicate that the novelty or patentable invention of the complainant's appliance is fairly questionable.