**TROPIC–AIRE, Inc., v. JUMPER et al.**

District Court, D. Minnesota, Fourth Division.
September 25, 1928.

No. 1037.

Paul, Paul & Moore, of Minneapolis, Minn., for plaintiff.

Shaw, Safford, Putnam & Shaw, of Minneapolis, Minn., and Wilson & McCanna, of Chicago, Ill., for defendants.

JOHN B. SANBORN, District Judge. The court not having jurisdiction of the defendants Burd High Compression Ring Company and Liberty Foundries Company, upon motion the suit as against them was dismissed on their special appearance.

The bill alleges the infringement of letters patent No. 1,668,490, covering improvements in heating apparatus for automotive vehicles. The patent has not been adjudicated, and was granted May 1, 1928. The defendants in their answer assert its invalidity and noninfringement. Numerous affidavits have been filed on behalf of the plaintiff, and also on behalf of the defendants. It has been shown that the plaintiff is a corporation having its principal place of business in the city of Minneapolis; that the defendants Jumper and Kingsley reside in Minneapolis, and that the defendant Burd Ring Company, or Burd Piston Ring Company, is a Minnesota corporation having its principal place of business at Minneapolis.

On February 7, 1927, Orville S. Caesar, of Minneapolis, filed his application for the patent in suit, which was thereafter assigned to the plaintiff, to whom letters patent were issued as hereinbefore stated. Claim 6 of the patent is as follows:

"A heating system for motor-driven vehicles, comprising an engine cooling system, including an intercommunicating jacket and radiator for a circulating cooling liquid, an air heating and distributing unit embodying a liquid receiving chamber in communication with the engine cooling system to form in conjunction with said system a circuit for circulation of liquid between said receiving chamber and engine cooling system, said receiving chamber being traversed by air passageways for heating air traveling through the passageways by heated liquid received from the engine cooling system, and a variable speed fan positioned in relatively close relation to the liquid receiving chamber for causing a more or less frequent recirculation of air through the liquid receiving chamber and the interior of the vehicle to be heated for effecting controlled variations of temperature within the interior of the vehicle, said liquid receiving chamber and fan being located within the interior of the vehicle and isolated from exhaust gases and fumes generated by the engine of the vehicle."

What the system of the plaintiff does is to take the hot water from the hot-water manifold of the car, conduct it through a small radiator usually positioned under the dash of the car, and then conduct it back to the hot water system to be reheated, so that there is a circulation of hot water through this radiator. A small electric fan is positioned behind the radiator. The fan motor is connected with the storage battery

of the car, and is controlled by a small electric switch. When in operation, the fan circulates the hot air produced by the radiator through the body of the car, and if operated at a low speed naturally produces less circulation than if operated at a high speed.

It appears that Mr. Caesar evolved this system in 1926, applied for a patent in February, 1927, and began to have the device advertised and marketed about the same time. After the device was placed upon the market, the defendants Jumper and Kingsley, who were doing business under the name of J & K Sales Company, made some sales of it, and a Mr. Burke, who occupied office space with them, was engaged in selling it, to their knowledge. The Burd Piston Ring Company is a corporation which also sells automobile accessories and in which the individual defendants are interested.

The plaintiff's heating system proved to be popular, safe, and efficient. A large market developed for it in the state of Minnesota and elsewhere. The Northland Transportation Company—perhaps the largest owner and operator of busses in this state—replaced its former exhaust heaters with the Tropic-Aire heater. Many of the large distributors of automobiles in the state have recommended this form of heater for installation in their cars, and some of the automobile companies have also recommended it, and have arranged their cars so that it can easily be connected to them. The demand for the heater indicates that it may supplant most of the present methods of heating automobiles.

It appears from the affidavits that during the winter and spring of 1927, and the winter of 1927–28, the Tropic-Aire heater was the only heater of its kind upon the market; that in the spring or summer of 1928 the Liberty Foundries Company brought out what they call the HaDees heater, which is in all respects similar to the plaintiff's heater, and heats the car in identically the same way, using the same means, the only difference apparently being the use of a one-point switch in its standard equipment rather than a two-point switch. The electric fan, however, is a fan which will operate at variable speeds, and by substituting a two-point switch for a one-point switch, which may readily be done, the device is in all substantial respects identical with the device of the plaintiff. The evidence seems to indicate that, at the time this heater was brought out, every one who was connected with bringing it out had knowledge of the plaintiff's device.

There are some affidavits on file which state that two devices similar in character to the plaintiff's device were made by individuals prior to the time that Mr. Caesar claims to have invented the Tropic-Aire heater. These affidavits, taken in connection with the answering affidavits, do not form any very satisfactory basis for a conclusion that there is much substance to that claim. Mr. Radford, who made an affidavit, has asked permission to withdraw it, and made the statement that certain facts set forth in it are not correct.

Counsel for defendants made the suggestion that it might be advisable to take testimony with reference to the question presented. I have considered that matter, and I think that that question had better be decided at the time of trial. Whatever may be the fact with reference to individuals having evolved some scheme of heating an automobile with a radiator connected with the hot water system of an automobile, plus an electric fan, prior to the time of the Caesar invention, it is quite obvious that the plaintiff was the first to place a successful heater of this kind upon the market, and my conclusion is that the court would not be required to take oral testimony at this time; that that question can be better determined at the trial.

As a general rule, it is true that a preliminary injunction should not be granted in such actions as this where the patent is unadjudicated and there has been no public acquiescence in its validity. However, it appears to be the rule that, where infringement is clear and there is no substantial question as to the validity of the patent, such relief may be granted. Milwaukee Printing Co. v. Stover (C. C. A.) 290 F. 387; Hutto Engineering Co. v. Grinder Sales Co. (D. C.) 18 F.(2d) 985; Lambert, etc., Co. v. Marvel Vibrator Co. (C. C.) 138 F. 82; Foster v. Crossin (C. C.) 23 F. 400; Fuller v. Gilmore (C. C.) 121 F. 129; McMaster v. Daugherty Mfg. Co. (C. C. A.) 219 F. 219; Palmer v. Wilcox Mfg. Co. (C. C.) 141 F. 378; Cary Mfg. Co. v. De Haven (C. C) 58 F. 786; Crescent Specialty Co. v. National Fireworks Distributing Co. (C. C. A.) 219 F. 130; Boyce v. Stewart-Warner Speedometer Corp. (C. C. A.) 220 F. 118.

The two main questions, then, to be determined are:

(1) Is infringement clear?

(2) Is there substantial doubt as to the validity of the patent?

As to the first question, I am unable to see that there is any substantial difference whatever between the two heating devices.

As to the second question, there is, of course, the presumption of validity which attaches to every patent. In addition to that, there is a strong showing that the plaintiff's device solved a problem long under consideration by inventors, and has met with a very considerable public demand, which appears to be constantly growing. The defendants by their literature admit that this heating system is "phenomenal" and "revolutionary." It is, of course, true that mere mechanical skill may produce an article which meets with great commercial success, and the mere fact that it does meet with such success will not raise mechanical skill to the dignity of inventive genius; but, where there is any doubt, courts give great weight to commercial success where that is attributable to the merit of the article, particularly if it amounts to the satisfactory solution of an old problem. See Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Jensen-Salsbery Laboratories, Inc., v. Salt Lake Stamp Co. (C. C. A.) 28 F.(2d) 99, and cases cited.

In Milwaukee Printing Co. v. Stover, supra, the Circuit Court of Appeals of the Seventh Circuit said: "A patent is presumptively valid, and that presumption might be so strongly buttressed on the initial showing that it would be an injustice to deny the motion for a preliminary injunction."

Defendants' claim is that all plaintiff's heating device amounts to is a mere application to the heating of automobiles of the "Modine unit heater," a heating device consisting of a radiator with a fan behind it, so constructed as to be readily attached to steam pipes or hot water pipes, and which has for some years been used to heat rooms and compartments. Upon the argument, this claim was the only one that I had any serious doubt about; but, upon further consideration, it seems to me that the same claim could be made as to most of the prior art patents relating to heating devices for automobiles, cited by the defendants to show anticipation. Practically all such devices are similar to some old device used for heating rooms or houses. The running of hot water pipes from the hot-water manifold of the car to the body and return is nothing but an adaptation of hot-water heating to automobiles.

Any method of taking the heat from the exhaust manifold into the body of the car is analogous to some old form of hot air heating. It is evident that the Patent Office has for a very considerable length of time considered the art of heating an automobile as an art distinct from that of heating stationary structures, and, obviously, it does present different problems, as is fully demonstrated by the fact that, although the demand for a satisfactory heater has been in existence for many years, no "phenomenal" or "revolutionary" one had been developed before this.

It is suggested that there can be no irreparable injury to the plaintiff by permitting the defendants to market the HaDees heater. It seems to me that, upon the showing that the defendants are not persons of known financial responsibility, the conclusion that the injury will be considerable, with no certainty that the plaintiff will be compensated if it prevails in this action, is justified. The defendants are obviously, it seems to me, taking advantage of a situation and a market created by the plaintiff, and will reap a large part of the rewards to which the plaintiff is entitled if its patent is valid. The defendants are operating in what is perhaps the plaintiff's principal market, and have done this with knowledge of the plaintiff's device.

Under all of the circumstances, I have reached the conclusion that a court of equity not only can, but should, require the defendants to refrain from competing with the plaintiff in the sale of these heaters until such time as it has been determined that the plaintiff is not entitled to the monopoly called for in its patent.

An interlocutory decree may be entered, upon reasonable notice to the defendants, and upon furnishing a bond in the sum of $25,000 upon the usual conditions.