**TROPIC–AIRE, Inc., v. SEARS, ROEBUCK & CO.**

**No. 1445.**

District Court, D. Minnesota, Fourth Division.

Jan. 20, 1930.

Paul, Paul & Moore, of Minneapolis, Minn., for plaintiff.

Barnett & Truman, of Chicago, Ill., for defendant.

SANBORN, District Judge.

The plaintiff claims the infringement by the defendant of claims 6 and 7 of reissue letters patent No. 17,131, O. S. Caesar, November 13, 1928 (original No. 1,668,490, May 1, 1928). These claims read as follows:

"6. A heating system for motor-driven vehicles, comprising an engine cooling system including an inter-communicating jacket and radiator for a circulating cooling liquid, an air heating and distributing unit embodying a liquid receiving chamber in communication with the engine cooling system to form in conjunction with said system a circuit for circulation of liquid between said receiving chamber and engine cooling system, said receiving chamber being traversed by air passageways for heating air traveling through the passageways by heated liquid received from the engine cooling system, and a variable-speed fan positioned in relatively close relation to the liquid receiving chamber for causing a more or less frequent recirculation of air through the liquid receiving chamber and the interior of the vehicle to be heated for effecting controlled variations of temperature within the interior of the vehicle, said liquid receiving chamber and fan being located within the interior of the vehicle and isolated from exhaust gases and fumes generated by the engine of the vehicle.

"7. A heating system for motor-driven vehicles, comprising an engine cooling system including an inter-communicating jacket and radiator for a circulating cooling liquid, an air heating and distributing unit embodying a liquid receiving chamber in communication with the engine cooling system to form in

conjunction with said system a circuit for circulation of liquid between said receiving chamber and engine cooling system, said receiving chamber being traversed by air passageways for heating air traveling through the passageways by heated liquid received from the engine cooling system, and a fan positioned in relatively close relation to the liquid receiving chamber for causing a circulation of air through the liquid receiving chamber and the interior of the vehicle to be heated, said liquid receiving chamber and fan being located within the interior of the vehicle and isolated from exhaust gases and fumes generated by the engine of the vehicle."

The defenses are lack of invention and noninfringement.

The case has been excellently tried, argued, and briefed by both sides.

Caesar designed the first successful hot water heater for automobiles. Letters patent were issued to him for his alleged invention. The heater has met with great commercial success. It has solved the problem of heating automobiles without the use of hot gases from the exhaust or hot air from the exhaust manifold. To my mind, the evidence indicates that, while it has not completely displaced other methods of heating motorcars, it is now the best, safest, and most practical means for accomplishing that purpose. Whatever weight can be accorded commercial and practical success, the solving of a problem of many years' standing, the granting of the patent, and imitation by competitors, the plaintiff is entitled to in this case. If there can be any substantial doubt as to whether what Caesar did constitutes invention, the effect upon the art of Caesar's device, and the general public approval with which it has been met, must settle that question in favor of the validity of the patent.

The question then is whether what he did, as disclosed by claims 6 and 7, had been anticipated, or whether the claims, in view of the prior art, must be so narrowly construed as to make the defendant a noninfringer.

The defendant's device is different in shape and size, uses a different form of radiator or heating element, employs a blower instead of a fan, is connected with the water cooling system in a slightly different way, and is intended to be located inside of the car in a different place than the Caesar heater. The air from the blower of the defendant's device is forced into a chamber below the radiator, and thence through the radia-

tor, where it is heated and passes into the body of the car. The blower takes the place of Caesar's electric fan, the radiator in each case performs the same function, and the result produced is substantially identical. While the structures differ in form and in detail, they are in effect the equivalent of each other.

It must be conceded, however, that Caesar came into an extremely old and extremely crowded art. Sturtevant's patent, No. 92,490, granted in 1869, shows a liquid-receiving chamber with tubes through it and a blower attached so as to blow hot or cold, depending upon the contents of the receiving chamber. Without mentioning other patents, Frank in 1919 shows a heating unit consisting of a heat radiator similar to Caesar's, and an electric fan to draw air through it for heating purposes. Modine, who applied for a patent in 1923, which was granted in 1928, shows a similar heating device, consisting of a casing with a radiator in front and an electric fan behind it, to cause a flow of air through it, and thus to give a blast of hot air to heat the chamber in which the heating unit is located. It appears, therefore, that there is no novelty in the combination of a radiator and an electric fan contained in a single casing and used as a heating device, in and of itself. The attaching of such a device to the water-cooling system of a gas engine used to propel an automobile, the device to be located inside of the body of the automobile, would hardly be invention. It is a matter of common knowledge that water in the engine's cooling system is heated by the engine's cylinders; that the water circulates through the system; that it can be conducted by pipes from the system into the body of the car and back to the system, so that there will be a flow of hot water through those pipes. That has been pointed out by patents in the prior art. To make an ordinary connection between a water-cooling system of a gasoline engine and a Modine or Frank heater would be well within the range of mechanical skill, and would not constitute invention.

The only substantial question in this case then is whether Caesar's adaptation of an old heating method, pointed out by Sturtevant, Frank, Modine, and others in the prior art, to the heating of an automobile body, can be truthfully said to involve patentable novelty. When that question came before me in the suit Tropic-Aire, Inc., v. Jumper et al., 28 F.(2d) 631, I was of the opinion that, since the Patent Office had seemed to distinguish between the general art of heat-

ing and the art of heating automobiles, and since nothing like Caesar appeared from the record in that case to have been known in the latter art, his broad claims might be sustained on the theory that they related to a distinct art.

I should like to adhere to that conclusion, but feel forced to abandon it. There cannot logically be any distinction between heating a stationary compartment and a moving one. Obviously, all that is necessary to make the Modine unit or the Frank unit effective is a flow of steam, hot water, or other heating medium for the radiator and a source of electricity for the electric fan. To attach such a heater to the steam line in a railroad car would not constitute invention, nor would it be invention to install it in a street car. To hold that it would be invention to adapt it to the heating of an automobile would be drawing a distinction which could not logically be sustained. It has been said that where the adaptation of an old device to a new use is outside the range of mechanical skill, it will constitute invention; but it would seem to be illogical to hold that the heating of an automobile is not analogous to the heating of a street car, passenger car, or stationary compartment.

■ There is no question that Caesar did design something which was extremely useful, practical, and beneficial; but, after all, what he did was to point out that an old method of heating compartments was admirably adapted to heating the compartment of an automobile. To take what some one else has invented or constructed and to apply it to a new use or to the same use, in a different but analogous environment, is not ordinarily invention, although it may meet with great commercial success. Ford Motor Co. v. Parks & Bohne (C. C. A.) 21 F.(2d) 943. The heating unit in the automobile performs the same function in the same way, and obtains the same result, as in a factory, coach, or other compartment.

This quotation from Western Willite Co. v. Trinidad Asphalt Mfg. Co. (C. C. A.) 16 F.(2d) 446, 450, appears to be applicable here:

"All the elements in this patent, or their equivalents, have been frequently employed in some combination for the production of the same or a kindred product; their functions remain unchanged. In the present combination it is claimed that a better result is obtained, but this does not amount to invention. As said by the Supreme Court in Smith v. Nichols, supra [21 Wall. 112, 22 L. Ed. 566], and by Judge Hook in Sloan Filter Co. v. Portland Gold Mining Co., supra [(C. C. A.) 139 F. 23], it involves the mere carrying forward, or more extended application of, an original idea involving a change only in form, proportion, or degree, and resulting in the doing of the same work in the same way and by substantially the same means."

■ Only two broad claims of the patent in suit are in dispute. The defendant's device, as I see it, is simply another adaptation of an old heating scheme to the heating of an automobile, and I have very reluctantly been forced to the conclusion that it is impossible, in view of the prior art with which Caesar was confronted when he procured his patent, to hold that sufficient breadth can be given to these claims to prevent the defendant from marketing its device. I am afraid that no inventor in this particular field can claim anything more than the detail and novelty of his particular structure.

It seems unfortunate that the Caesar patent should not be accorded possession of the entire field which its claims, if broadly construed, would give it, and which has been developed by the plaintiff and its licensees. It may be that the higher court can find some logical way to accomplish that result without doing violence to established rules of patent law.

A decree may be submitted, upon reasonable notice, dissolving the temporary injunction heretofore granted and dismissing the bill for want of equity.