**NATIONAL POPSICLE CORPORATION et al. v. BROOKFIELD ICE CREAM CORPORATION.**

No. 6445.

District Court, E. D. New York.

Aug. 17, 1932.

Dean, Fairbank, Hirsch & Foster, of New York City (Richard J. Cowling, of Cleveland, Ohio, and Morris Hirsch, of New York City, of counsel), for plaintiffs.

Daniel G. Albert, of New York City, for defendant.

CAMPBELL, District Judge.

This is a motion for a preliminary injunction in an action in equity brought to enjoin the alleged infringement of patent No. 1,505,592, issued to Frank W. Epperson, for frozen confectionery, granted August 19, 1924, and for damages.

The order to show cause why the motion should not be granted was returnable on July 20, 1932, but argument thereon was adjourned to August 3, 1932, when the motion was argued and finally submitted on August 6, 1932.

The two plaintiffs are, respectively, the owner and the exclusive licensee under the patent in suit, and their title is not contested.

The patent is for a process, and the patentee in his patent says that he has "invented certain new and useful Improvements in Frozen Confectionery."

He further says in his specification:

"It is among the objects of the invention to provide a method or process for making a frozen confection of attractive appearance, which can be conveniently consumed without contamination by contact with the hand and without the need for a plate, spoon, fork or other implement, which process can be expeditiously carried out at small expense with simple apparatus, without the need for expert care and in thoroughly sanitary manner.

"In the preferred method for making the confection, small containers which may be ordinary test tubes are charged with the liquid syrup from which the confection is frozen and the handle sticks are inserted thereinto and pressed down into contact with the bot-

toms of the containers, to overcome the buoyant effect of the liquid. The syrup is then subjected to intense refrigeration, so that it is frozen solid within a few minutes. The test tube, confection and stick are thus frozen together into a rigid mass, from which the test tube container is removed by drawing outward on the handle after slightly loosening the container from the confection."

Claims 1, 2, 3, 4, and 5 of the patent in suit have been adjudged to be valid, in the action of Popsicle Corporation v. Weiss (D. C.) 40 F.(2d) 301, 302; but claims 6 and 7, which were also at issue in that suit, were not so adjudged or mentioned in the judge's opinion, which holds valid claims 1, 2, 3, 4, and 5, and therefore there has been no adjudication of the validity of those claims.

The instant suit is based on claims 1 to 7, both inclusive.

No attack is made on the validity of the patent, so it is not necessary to consider the covenant in paragraph 5 of the written license given by the plaintiff the Popsicle Corporation of the United States, to the defendant, "not to contest or deny in any way the validity of any of the above mentioned Letters Patent, or assist others in any such contest during the respective terms of said Letters Patent"; but in any event, the defendant has the right to question the broad construction of the claims which the plaintiff is seeking, and to show limitation thereof by the prior art and the patent itself.

The said license agreement "grants to the Licensee the right to manufacture, according to the specifications of formulas, materials, practices and standards prescribed by Licensor, from the date hereof and during the remainder of the calendar 193—, confections comprising a body of flavored syrup, water-ice, or sherbet (but not ice cream, frozen custard or the like) frozen on a stick and embodying one or more of the inventions covered by the following United States Letters Patent, which Licensor either owns or under which it may grant licenses, as follows:

"1,470,524, issued October 9, 1923, to Harry B. Burt 1,505,592, issued August 19, 1924, to Frank W. Epperson 1,717,407, issued June 18, 1929, to Eric Radford 1,718,-997, issued July 2, 1929, to Harry B. Burt Des. 85,189, issued September 22, 1931, to Leonard B. Krick

"and to sell said licensed confections under the trade-mark 'Popsicle,' which Licensor owns and hereby gives Licensee the right to use only so long as Licensee complies with the terms, conditions and/or obligations of this agreement or license."

And there is no evidence that the defendant has used the trade-mark Popsicle on any article other than one made in full compliance with the terms of that agreement, or that the defendant has manufactured Popsicles of flavored syrup, water ice, or sherbet, other than in full compliance with the terms of the said license agreement.

The contention of the plaintiff is that the defendant is making ice cream confections which are excluded from the license agreement, and is using the identical process described and claimed in the Epperson patent in suit, therefore it is unnecessary for me to consider whether the license agreement is in restraint of trade and contrary to the Clayton Act (38 Stat. 730) and the Sherman Anti-Trust Law (15 USCA §§ 1–7, 15), and I express no opinion thereon.

It is likewise unnecessary for me to consider whether such a defense may be pleaded.

The instant suit is based only on the Epperson patent, No. 1,505,592, whereas the license agreement gave rights to manufacture under said patent and others enumerated.

The action of Popsicle Corporation v. Weiss, supra, was based not only on the patent in suit, but also on the Burt patent, No. 1,470,524, and it is also true that most of the other recited suits on the patent in suit were also based on other patents.

It is also true that in none of the recited suits, including Popsicle Corporation v. Weiss, supra, did the infringement complained of consist of making ice cream confections, but in each and all of them it consisted of making Popsicles, advertised by plaintiff as a drink on a stick, a frozen confection made of a potable liquid flavoring matter and sugar, which might be sucked from the confection and leave a tasteless mass.

What the defendant is making which is alleged to infringe is an ice cream confection, on a stick.

The patentee in the patent in suit describes the product as follows: "The frozen product may be generically designated a water ice or sherbet, although it presents certain differences from the substances generally known by these names. The congelation of the syrup maintained in quiescent condition during freezing, as distinguished from the manufacture of other confections which are agitated during congelation, results in a more or less crystalline product of hard snowy consistency, where the latter confections are of

the familiar homogeneous creamy consistency of ordinary ice cream, water ice or sherbet."

In his opinion in Popsicle Corporation v. Weiss, supra, Judge Bondy said none of the prior art patents disclose: "A process for making a frozen confection (with or without a handle member) by the application of rapid and intense refrigeration of a potable liquid, flavoring matter, and sugar in a quiescent condition, producing a carrier for liquid syrup which may be sucked from the confection and leave a tasteless mass of ice."

And also made the following statements:

"The confection may be made and handled without contact of the hands with the portion to be sucked or consumed. It is frozen in individual units of uniform size. Its ice crystals are not broken up by agitation into small impalpable crystals like those formed in frozen confections such as ice cream and water ice from which the syrup or flavoring matter cannot be sucked to leave a tasteless ice mass."

"The process is not merely one of freezing, but it is of freezing particular material under special circumstances whereby a novel product is produced."

"The claims relate to a specific mode of treatment of certain material to produce a new and useful article, and are therefore valid."

This it seems to me definitely establishes the fact that what the court sustained was the process "of freezing particular material under special circumstances whereby a novel product is produced."

Ice cream is not a novel product but one that has been known for long over one hundred years, and it does not seem to me that in advance of a trial, I should hold that a novel product would be produced by freezing ice cream on a stick.

Popsicles, as testified by plaintiff's expert on the trial of Popsicle Corporation v. Weiss, supra, were a mass of ice frozen in such a manner as to hold within the mesh of the ice crystals so formed a syrup, liquid in form, or in such state that it would melt before the main body of the confection, and so constitute a drink on a stick; and he also further testified that it is possible to suck all of the syrup from a Popsicle and leave a white tasteless mass of water ice.

This the court found was a novel character of confection.

Ice cream is an entirely different product and was so conceded by the testimony of plaintiff's expert in Popsicle Corporation v. Weiss, supra.

Ice cream differs from Popsicles both in the method of manufacture and in its composition.

Ice cream is made by mixing skimmed condensed milk, butter, cream, whole milk, gelatine, sugar, and flavoring extract, which may or may not contain citric acid. These are put into a pasteurizer and kept at 145 degrees Fahrenheit for 30 minutes to pasteurize the milk, cream, and butter used. It is then run into a homogenizer where, under high pressure, the mass is thoroughly stirred, all the ingredients uniformly distributed, and the ice cream given its smoother qualities. It is then cooled to 40 degrees Fahrenheit and placed in a container, which is known as the ager, where it is kept from 24 to 48 hours. This treatment enables the proper whipping of the cream in the freezer. From the ager the mix is run to a freezer, where at a temperature of 4 below zero Fahrenheit it is whipped into ice cream. The whipped product which is semisolid, having the technical name of ice cream mix, is then run into molds and frozen to shape in a circulating brine at a temperature of minus fifteen to minus thirty five degrees Fahrenheit. The shapes are then removed from the molds and stored in the hardening room to harden the outer surface of the small mass of ice cream. It is then coated with chocolate by dipping in a bath of molten chocolate. The coated product is then allowed to dry and bagged. It is then ready for shipment.

This is the process used by defendant.

Popsicles are manufactured in an entirely different manner.

From a gallon bottle of Popsicle syrup, which gives the formula used in the following process of manufacture of Popsicles to twenty-two gallons of water, some sugar, gelatine, and flavoring extracts, along with citric acid, are added. These ingredients are dissolved in either a barrel or a small tank at room temperature. This liquid is then run directly without any cooling or further modification to the molds, where it is frozen into shape. The Popsicles are taken from the molds, bagged, and are ready for shipment.

This is the method used by the defendant.

Both in the case of the ice cream on a stick and the Popsicles, sticks are inserted in the material in the containers before refrigeration, by the defendant, and after freezing both the ice cream on a stick and Pop-

sicles are loosened by heat and withdrawn from the molds by the sticks frozen therein.

Claims 4 and 5 of the patent in suit upon which plaintiff particularly relies, read as follows:

"4. The process of making a frozen confection which consists in charging a generally cylindrical container, such as a test tube with a syrup in liquid form, inserting a handle stick thereinto and subjecting the liquid to refrigeration, effecting loosening of the surface of the frozen confection thereby formed with respect to the container wall and drawing it therefrom by the handle stick.

"5. The process of making a frozen confection, which consists in charging a generally cylindrical container, such as a test tube, with a syrup in liquid form, inserting a stick thereinto to substantially contact the bottom thereof and to protrude from the top, and subjecting the liquid to refrigeration, loosening the surface of the frozen confection, thereby formed with respect to the container wall and drawing it therefrom by the handle, whereby the handle in the withdrawing operation, constitutes a core upon which the tension is exerted without breaking the frozen mass and serves as a core to maintain the mass intact preparatory to and during consumption."

There is a considerable conflict as to whether certain of the elements of the claims are to be found in the defendant's process of the manufacture of ice cream on a stick, and the proof offered by plaintiff does not produce that certainty of conviction on my part that I can say that the claims of the patent in suit read on the defendant's process. This is especially true in view of the opinion of the judge in Popsicle Corporation v. Weiss, supra.

In claims 1, 2, and 6, the matter subjected to refrigeration is described as a "potable liquid," "potable substance," or "potable flavored substance."

"Potable" is defined in a standard dictionary as: "(1) Suitable for drink, said of water, (2) something drinkable; a drink."

Ice cream mix is not a liquid. It is semisolid when it comes to the molds.

It is not potable; truly it contains flavoring matter and sugar; but it also contains skimmed milk, butter, cream, and gelatine, and is radically different from the weak watery solution of sugar and flavor used in the manufacture of Popsicles.

Therefore these elements, on the evidence before me, are not found in defendant's process for manufacturing ice cream on a stick.

In claims 3, 4, and 5 the matter subjected to refrigeration is described as "syrup" or "syrup in liquid form."

Ice cream mix is a homogeneous semisolid, and the evidence herein does not convince me that it is a "thick sweet liquid," as syrup is defined in the new Standard Dictionary.

Nor does it seem to me, taking into consideration the whole specification, that the patentee intended by the use of the word "syrup" to include ice cream mix.

Therefore these elements, on the evidence before me, are not found in defendant's process.

In claims 4, 5, 6, and 7, the container is described as "generally cylindrical"; "such as a test tube."

The specification of the patent does say: "While the circular cylindrical form shown in the drawings is preferred, it will be understood that the term 'cylindrical' in a mathematical sense is generic to other forms, and is so used." But in determining what the patentee intended to describe, it is necessary to find what was required for the practice of his process.

The whole invention is based on the security with which the handle and core are connected.

A circular body has greater resistance to distortion and disruption than a body of the same cross-sectional area but in rectangular shape.

The molds used by the defendant in manufacturing ice cream on a stick are "box-shaped cavities," and it seems to me that in view of the purpose of the patent in suit, these have not been shown to be what the patentee claimed to be generically cylindrical containers.

Therefore this element, on the evidence before me, is not found in defendant's process for manufacturing ice cream on a stick.

As the claims sued on are each for a combination, and an important element or elements, on the evidence before me, are not found in the defendant's process for manufacturing ice cream on a stick, infringement is not shown.

On the question of irreparable damage, the showing of plaintiff is weak.

The season is said to be until Labor Day, but about 20 days distant, and there is no showing that defendant is not responsible

and able to answer for such damage as it may cause in that short period of time, and the suit may be tried in October or November next; and it must not be lost sight of that no such construction as plaintiff now contends for has been given to the claims of the patent in suit, and that both the patentee in his specification, and the plaintiff's expert in Popsicle Corporation v. Weiss, supra, appear to have differentiated ice cream from the product which the process of the patent in suit would produce, and which patent the judge in that suit sustained, because the product was novel.

There is in my mind a grave question whether the claims of the patent in suit can be given a construction broad enough to cover the process complained of, and certainly they cannot on the evidence before me; therefore the construction of the claims should be left to the trial and a preliminary injunction refused. Fuller v. Gilmore (C. C.) 121 F. 129.

Motion denied.