### WILLIAMS v. O'TOOLE.

### In re ROCKY GLEN WATER CO.

(Circuit Court of Appeals, Third Circuit. February 16, 1914.)

No. 1768.

INJUNCTION (§ 241*)—RESTRAINING EXECUTION—BOND—REMEDY ON BOND.

Where in a bankruptcy proceeding the court restrained an execution sale of the bankrupt's property on condition that the petitioning creditors file a bond guaranteeing to the execution creditor interest on the liens standing in his name during the time the' sale was restrained, and a controversy arose as to interest on liens assigned to the execution creditor, the assignments of which were not recorded until after the sale, the court should have permitted the execution creditor to sue the petitioning creditors and the surety on the bond, instead of determining the controversy under a rule to show cause; since, assuming that the court had power to decide the dispute summarily, such remedy was not exclusive, and a suit would have protected the execution creditor's rights, not only against the petitioning creditors, but also against the surety, and hence an order was improvidently granted making absolute a rule to show cause why the amount admitted to be due by the petitioning creditors should not be accepted in full settlement.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 544–552; Dec. Dig. § 241.*]

Appeal from the District Court of the United States for the Middle District of Pennsylvania; Chas. B. Witmer, Judge.

Bankruptcy proceeding against the Rocky Glen Water Company. A rule to show cause issued on application of M. J. O'Toole was made absolute, and E. S. Williams appeals. Reversed, with directions.

Cole B. Price, Samuel Price, and John H. Price, all of Scranton, Pa., for appellant.

Ralph W. Rymer, of Scranton, Pa., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. This controversy arises out of certain proceedings attending the sale of real estate belonging to the Rocky Glen Water Company. On May 1, 1912, an involuntary petition in bankruptcy was filed against the company; the real estate being then under levy. The sheriff of Lackawanna county had fixed the sale for May 4, and the district court made a temporary order restraining the sale. On June 10, after some further proceedings, the order was continued until October, but on condition—

"* * * that the petitioning creditors in this case pay to E. S. Williams, execution creditor, in cash, such expenses as he was put to in advertising the sale of the property of the Rocky Glen Water Company, for the sale of the same advertised in May, 1912, and on condition that the petitioning creditors file with the court a good and sufficient bond, guaranteeing to Mr. E. S. Williams, for the liens that stand in his name, 6 per cent. interest from the date when the sheriff's sale was stayed in May until the date of the sheriff's sale in October, providing, the property is sold then by the sheriff, and no settlement has been reached; and Myron Kasson, E. S. Williams, P. F. Connor, high sheriff of Lackawanna county, are enjoined from proceeding further at this time on any executions that may be in their hands for the sale of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

property of the Rocky Glen Water Company; this restraining order to continue until such time as further order may be made by this court."

In compliance with this condition M. J. O'Toole, one of the petitioning creditors, gave bond in $2,000, with the Title Guaranty & Surety Company as security. On October 4 the property was sold by the sheriff, and Williams bought it in. There were at least five liens upon it; of these he was the record owner of two, and Myron Kasson was the apparent owner of the other three. Kasson's liens were prior in time, but he had assigned them to Williams in March, 1912, and Williams had agreed to protect Kasson's interest thereunder. The assignments were not entered of record until October 5, the day after the sale.

O'Toole paid the advertising expenses referred to, but he and Williams could not agree upon the amount of interest that should be paid. The bond required by the restraining order secured the payment of five months' interest to Williams "for the liens that stand in his name"; but the parties took different views about the construction of this phrase, in the light of all the facts surrounding the situation. Williams contended that it was understood to cover the Kasson liens as well as the two that were formally in his own name, while O'Toole insisted that it did not cover the Kasson liens, mainly because the assignments had not been put on record until after the sale. O'Toole admitted liability in the sum of $728.38, while Williams claimed $1,447.-91. As they could not agree, O'Toole presented a petition to the District Court, setting out the facts, offering to pay $728.38 into court in full payment, and asking to have the surety discharged from liability on the bond. Thereupon the court granted a rule on Williams to "show cause why he should not accept in full settlement of the bond filed in this case the sum of $728.38, and why the Title Guaranty & Surety Co. of Scranton, Pa., surety on the bond, should not be discharged." Williams protested against the proceeding by rule, "for the reason that he is entitled to a trial by jury in a suit in assumpsit to determine the liability on said bond, of which right he will be deprived if the surety on said bond should be discharged and the liability fixed and determined as prayed for in said petition"; but (having thus saved his rights by protesting) he made answer on the facts. So far as appears by the record, no money was actually paid into court, and the court proceeded upon the assumption that jurisdiction existed (1) to determine the dispute and (2) to determine it on a rule to show cause. A special master was appointed to take testimony and report, and at the first meeting before him Williams objected again to the jurisdiction of the court for the reasons set forth in his answer, and asked leave to submit testimony "subject to that objection, and without waiving any rights under his answer." At the end of the hearing he asked again that the master should find against the jurisdiction, and upon the master's refusal he excepted formally, and presented the same objection once more to the District Court. The report was made in April, 1913, and on June 7 the District Court (without filing an opinion) made the following order:

"After hearing and on due consideration, the exceptions to the special master's report are overruled, and his report confirmed. The rule on E. S. Wil-

liams to show cause why he should not accept in full settlement of the bond filed in this case the sum of $728.38 and the guarantors discharged is made absolute. The respondent, E. S. Williams, to pay the fees of master, stenographer, and clerk."

From this order the appeal now before us was taken, and the lack of jurisdiction in the District Court is specially assigned for error; the appellant insisting upon his right to a jury trial in the state court. All parties are citizens of Pennsylvania, the amount in dispute is less than $3,000,'and no federal question is involved.

In deciding this appeal we do not find it necessary to consider the jurisdiction of the district court. In passing the question, we.may refer to Russell v. Farley, 105 U. S. 443, 26 L. Ed. 1060, and Meyers v. Block, 120 U. S. 211, 7 Sup. Ct. 525, 30 L. Ed. 642, where the Supreme Court has discussed situations that resemble the present controversy in some respects. In our opinion, however, even if we assume for the purposes of this case that the district court had the power summarily to decide the dispute between Williams and O'Toole, it must certainly be conceded that this power did not offer the exclusive remedy. Undoubtedly Williams might have sued upon the bond—such a suit was brought in Meyers v. Block—and he would thus have protected his rights fully, not only against O'Toole, but also against the surety. The order appealed from did not so protect them, and we think it was improvident and must be disapproved. The learned judge should have allowed suit to be brought on the bond against O'Toole and the surety.

The order of June 7, 1913, is reversed at the costs of the appellee, and the district court is directed to dismiss the petition on which the order was based.