## · LINDLEY v. DENVER et al.

### (Circuit Court of Appeals, Sixth Circuit.   March 7, 1919.)

### No. 3162.

**1. CONTINUANCE ☞7—DISCRETION.**

The matter of granting a continuance to plaintiff, who was not ready when the case came on for trial, was discretionary with the District Court.

**2. EQUITY ☞359—RIGHT TO DISMISS WITHOUT PREJUDICE.**

Where no claim has been made for cross-relief, plaintiff has an absolute right to dismiss his bill without prejudice at any time before the case is ripe for decision, if not later, and the expense incurred by defendant in preparing for trial, and the resulting delay, do not alone constitute good cause for refusing such dismissal.

**3. COURTS ☞332—CHANGE IN PRACTICE—ADOPTION OF NEW RULES—EFFECT.**

The Supreme Court, in adopting new equity rules in 1912 (198 Fed. xix, 115 C. C. A. xix), and in thus declining longer to retain the English chancery practice of 1842 as a standard, did not intend to abolish the whole body of federal equity practice which had grown up under the old rule 90 and had become the accepted practice in the Supreme and all inferior courts; the old practice continuing, except as it was changed.

**4. EQUITY ☞359—RIGHT VOLUNTARILY TO DISMISS—CASE NOT RIPE FOR DECISION.**

Case wherein plaintiff asked leave to dismiss the bill, without prejudice, which was denied, and the bill dismissed absolutely, *held* not within any exception to the rule of right to dismiss without prejudice concerning cases which are ripe for decision and where there is proof before the court to justify dismissal on the merits, so that it is too late for a voluntary dismissal without prejudice.

**5. DESCENT AND DISTRIBUTION ☞83—RESCISSION OF SETTLEMENT OF ESTATE—JURISDICTION TO DISPOSE OF EQUITIES—TENDER BACK OF CONSIDERATION.**

In an equity suit for rescission of settlement of the estate of plaintiff's mother, the court in its final decree can properly marshal and dispose of any equities that might exist in connection with any duty on the part of plaintiff to tender the consideration back.

**6. DESCENT AND DISTRIBUTION ☞83—RESCISSION OF SETTLEMENT OF ESTATE—SUFFICIENCY OF BILL.**

Bill by a daughter for rescission of a settlement of her mother's estate *held* not insufficient on its face, and subject to dismissal on motion for failure to allege any necessary tender back of consideration by the daughter to support the rescission, which, under defendants' answers, evidently would have been refused.

**7. DESCENT AND DISTRIBUTION ☞83—SETTLEMENT AMONG HEIRS—SUIT FOR RESCISSION—PLEADING.**

In a daughter's suit to rescind a settlement of her mother's estate, bill and defendants' pleadings in opposition *held* to raise an issue of fact whether or not certain stock was or was not a part of the estate of plaintiff's mother, to a trial of which plaintiff was entitled, so that dismissal of the bill, after denial of plaintiff's motion for leave to dismiss voluntarily without prejudice, was erroneous.

**8. EQUITY ☞365—DISMISSAL ON MERITS—CLAIM OF BAD FAITH—REFUSAL TO ALLOW VOLUNTARY DISMISSAL.**

Though the circumstances tended to persuade the trial court that plaintiff's suit for rescission of a settlement of her mother's estate was not prosecuted in good faith, but vexatiously, in the absence of issue upon or trial of the claim of bad faith, final dismissal of the bill on the merits

cannot be supported on such ground; plaintiff having had prima facie an absolute right to dismiss without prejudice, as she asked leave.

**9. APPEAL AND ERROR ⊙⇒1178(1)—DIRECTION OF ORDER—EQUITY CASE.**

On a writ of error, an appellate court will direct the entry of the order which should have been made by the trial court on the day when it entered the judgment under review; but on appeal in equity there is no such rigid rule, and the appellate court will direct the order which ought to be made as the situation exists after the mandate goes down.

**10. EQUITY ⊙⇒359—MOTION FOR VOLUNTARY DISMISSAL—DELAY OF DECISION TO PERMIT CROSS-CLAIM.**

In view of the peculiar facts in a daughter's suit for rescission of settlement of her mother's estate, *held*, that the trial court would have been justified, if such course had appealed to its discretion, in delaying decision of plaintiff's motion for dismissal without prejudice until defendants might have had opportunity to make any cross-claim if they promptly exercised the privilege.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Suit in equity by Mary Louise Denver Lindley against Matthew Rombach Denver and others. From an order dismissing the bill, plaintiff appeals. Order vacated and set aside, and plaintiff's motion for leave to dismiss without prejudice directed to stand for hearing in due course and to be granted, etc.

Burton B. Tuttle, of Cincinnati, Ohio, and Charles E. McMahon, of New York City, for appellant.

A. E. Clevenger, of Cleveland, Ohio, and John Weld Peck, of Cincinnati, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. When this equity case, which was at issue in the court below upon full pleadings, came on for trial in open court at the time fixed, Mrs. Lindley, the plaintiff, was not ready, and asked a continuance. The court denied this request. Plaintiff then asked leave to dismiss the bill without prejudice. This request was also denied, and an order was entered dismissing the bill absolutely and without qualification. The plaintiff appeals, and complains both of the refusal to give a continuance, and of the final order.

[1] The matter of continuance was discretionary, and there was ample ground upon which to base the action which the court took.

[2] It undoubtedly has been the settled rule of the federal courts in equity that, where no claim had been made for cross-relief, plaintiff had an absolute right to dismiss his bill without prejudice, at any time before the case was ripe for decision (if not even later), and that the expense incurred by defendant in preparing for trial and the resulting delay did not alone constitute good cause for refusing such dismissal. Pullman Co. v. Transportation Co., 171 U. S. 138, 145, 146, 18 Sup. Ct. 808, 43 L. Ed. 108; Detroit v. Detroit Ry. (C. C.) 55 Fed. 569, 572; Harding v. Corn Products Co. (C. C. A. 7) 168 Fed. 658, 664, 665, 94 C. C. A. 144, certiorari denied 214 U. S. 515, 29 Sup.

Ct. 696, 53 L. Ed. 1063; The Bainbridge (C. C. A. 9) 199 Fed. 404, 406, 118 C. C. A. 88). It is conceded that the present case would fall within this rule, and that the action of the trial court would be erroneous, unless for the effect of some one of those special considerations which we proceed to discuss.

[3] The first is that the rule itself has grown up during the period while the federal courts of equity were governed by the practice in the High Court of Chancery, as it existed in 1842 (old rule 90), and that this arbitrary right of the plaintiff to dismiss the bill was an element of the English chancery practice existing at that time, while the new equity rules adopted in 1912 (198 Fed. xix, 115 C. C. A. xix), no longer provide any such dependence upon the old English practice It is therefore said that the rule in question falls because its foundation is gone, and that federal courts of equity should now follow either the later English practice, or what is said to be the inherently reasonable practice, and should make the right to dismiss without prejudice one which is discretionary with the trial court according to the facts of the particular case. We do not find ourselves able to accept this view. We do not think that the Supreme Court, in adopting the new rules in 1912, and in thus declining longer to retain the English chancery practice of 1842 as a standard, intended to abolish the whole body of federal equity practice which had grown up under the old rule 90, and had become the accepted practice in the Supreme and all inferior courts. It is more reasonable to think that the fixed and settled equity practice of the federal courts in this country was intended to continue as it was in 1912, save as it was changed by these new rules; and this is, in effect, the conclusion of the Circuit Court of Appeals of the Second Circuit in the only case which has been brought to our attention touching the subject. Individual Co. v. Union Co., 250 Fed. 625, 626, 162 C. C. A. 641.

[4] It is next said that the case was, in effect, ripe for decision, and that there was enough proof before the court to justify dismissal on the merits, and it was therefore too late for a voluntary dismissal without prejudice. Without undertaking to decide just when it may thus be too late, short of actual decision, we conclude that this case does not fall within any exception of this kind. Some depositions had been taken by plaintiff, and they were on file. The defendant had taken no proofs, unless the answers given by some of defendants to plaintiff's interrogatories can be considered as such proofs; and we find no justification for attributing that character to them.

[5, 6] It is next alleged that the bill was insufficient on its face and was subject to dismissal on motion, and hence that the action taken did not result in prejudice to plaintiff. The suggested grounds of insufficiency in the bill are two: First, that it did not allege the necessary tender to support the rescission; and, second, that it did not state facts to support the relief claimed.

The bill alleged that Mrs. Lindley, as heir of her mother, was entitled to a one-ninth share in her mother's estate; that her brother and sister, the other heirs, made a settlement with her and paid her a sum of money in full satisfaction for her share in the estate; that

she later discovered that they had misled her as to the amount of the estate, and she filed a bill to set aside this settlement and obtain her rightful share; that the suit so commenced was compromised and settled and that her brother and sister paid her the additional sum of $15,000 in full satisfaction and discharge of all her claims to her mother's estate; that she later discovered that valuable assets had been omitted from the inventory of the estate furnished her to induce this second settlement, and she therefore filed this present bill (or what for this purpose, we call the present bill) to repudiate and rescind both the first and the second settlements and for the necessary accounting and complete payment of her true and full share. The bill did not allege that she had ever tendered to the defendants the return of the consideration which she had received upon these settlements and in connection with her demand for rescission; and this is said to be a fatal defect in the bill.

If we were considering the first bill, it would be clear enough that a tender of the consideration back was not a necessary preliminary. It would appear that plaintiff was entitled to what she had received, and there would be no reason for requiring that she should tender anything back. The suit in equity is for a rescission, not as upon a rescission; and the court can, in its final decree, properly marshal and dispose of any equities that might exist in that connection. Gould v. Cayuga Bank, 86 N. Y. 75; Thomas v. Beals, 154 Mass. 51, 27 N. E. 1004. We are not sure that this rule reaches the second settlement. As to that, defendants deny that she was entitled to anything. They say they paid her $15,000 for peace. It seems that the defendants might have been entitled to require a tender of this $15,-000, with the bill at the latest, so that they might, if they wished, accept the tendered rescission of the second settlement contract, and so that both parties would fall back upon the position which they occupied when the first bill was filed; but defendants have cut themselves off from any substantial right to the benefit of this principle. In their answers in this present case, they have relied upon the second settlement as valid in all particulars, and they expressly insist that this second settlement should not be rescinded but should stand in full force and effect. It is therefore plain that if a tender had been made, they would have refused it; and the court surely cannot refuse to hear the plaintiff because she has failed to do a confessedly vain and useless thing.

[7] The bill first filed directed against the second settlement contained only vague and general allegations of fraud and concealment. We assume, without holding, that the bill was, for this reason, bad. The plaintiff undertook to amend by averring also the stock transaction hereafter mentioned; pending a motion thus to amend, dismissed the bill voluntarily; and, after a very short interval, filed a new bill which was substantially the same which she had sought to obtain by amendment. The question is, therefore, whether this new bill states, as to the stock transaction, a case which requires hearing. It is, in brief, that plaintiff's mother was a stockholder in the Clinton County National Bank; that this bank had taken over, on the

foreclosure of collateral, some industrial stock which was of doubtful value, and which the Comptroller refused to permit the bank to carry in its assets; that the stock was turned over to plaintiff's mother, and she gave her note to the bank therefor; that this stock had become very valuable, and that it had been, by defendants, excluded from the mother's estate, upon the pretense that it really belonged to the bank. The defendants alleged, in pleading and in response to interrogatories, that the stock had always been the property of the bank; that it was transferred to plaintiff's mother only to protect her against liability on her note; that the note was paid very shortly out of dividends from the stock; that the stock was then reassigned by the mother to the bank; that it had been held alone by the bank without claim by her for many years before her death; and that it had never been a part of her estate. If the record permitted the court to assume the truth of the things thus alleged in answer, the case would have a different aspect, and we can not be very sure from the course taken on the argument that plaintiff's counsel have any intention of disputing the substantial truth of these allegations; but there is nothing on the record to justify the court below or this court in proceeding to make a final order based on the supposition that these allegations are admitted. Upon the pleadings, there is a sharp issue of act as to whether this stock was or was not a part of the estate of plaintiff's mother; and plaintiff seems to have been entitled to a trial on that issue.

[8] Finally, it is said that the conduct of the plaintiff had been so vexatious, and had so far evidenced an intent not to try her alleged rights, but to refrain from trying them, and to use a succession of suits as a means of extorting money, as to justify the court in making an order which would put an end to the matter. The history of this and previous litigation before the trial judge, and other facts which very likely were conceded in argument before him, as they were before us, do not leave this claim without color; but we are unable to think it justified the action taken. Defendant asked no cross-relief, and if final action in the subject-matter was to be taken, based either upon the theory that plaintiff's action was vexatious or upon the theory that equity, having been asked to vacate the settlement, would, on the contrary, approve and confirm it, plaintiff was entitled to an issue and a day in court thereon. When we are proceeding, as we do, upon the basis that the plaintiff had, prima facie, an absolute right to dismiss without prejudice, and that the allowance of such dismissal was not a discretionary matter in the absence of special justification, we are compelled to conclude that, however much the circumstances tended to persuade the trial court that plaintiff's action was not prosecuted in good faith, but where there had been no issue upon, or trial of, that claim of bad faith, a final dismissal of the bill cannot be supported upon that ground.

[9] These views make it necessary to set aside the final order of dismissal; but it is apparent that a question exists which is likely to bring the case back here immediately, and we think proper to indicate our views now. Upon a writ of error, an appellate court will

direct the entry of that order which should have been made by the trial court on the day when it entered the judgment under review; upon an appeal in equity, there is no such hard and fast rule; the appellate court will direct the order which ought to be made as the situation exists after the mandate goes down; and this leads to the steps which may naturally be here anticipated.

[10] At any time before motion to dismiss was made, the defendants had the undoubted right to claim any appropriate cross-relief, and such claim would have prevented the dismissal until the cross-claim could be heard. Without undertaking to declare any rule beyond the facts of this case, we think that those peculiar facts would have justified the trial court, if such course had appealed to its discretion, in delaying a decision of the motion until the defendants might have had opportunity to make such cross-claim, if they wished to do so, and promptly exercised the privilege. Where litigation has a history like this, we would see no injustice, but, rather, the opposite, in permitting such a cross-claim, and in then proceeding in due course to hear and decide the complete merits of the controversy and to either vacate the settlement or affirm it and set the matter at rest. It is additionally clear that no prejudice can come to plaintiff from this course, if it is now pursued, since it will give her the very opportunity which she sought, to make further preparations and be ready for trial.

Our direction will therefore be that the order of dismissal be vacated and set aside, and that plaintiff's motion for leave to dismiss without prejudice stand for hearing in due course and be granted, unless the trial court shall, in its discretion, think proper to delay the hearing and disposition thereof until defendants have opportunity to claim cross-relief.

The appellant will recover the costs of this appeal.