# MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY v. WASHBURN LIGNITE COAL COMPANY.

ERROR TO THE DISTRICT COURT, SIXTH JUDICIAL DISTRICT, OF THE STATE OF NORTH DAKOTA.

No. 55. Argued January 29, 1920.—Decided December 20, 1920.

A judgment of a state court cannot be reviewed here by writ of error upon the claim that it gives effect to a local rate statute in violation of a carrier's rights under the Fourteenth Amendment, when it is apparent, from the state court's opinion, that it did not uphold and

enforce the statutory rate as such but rested its decision on other, independent grounds, substantial in character, broad enough to sustain the judgment, and not involving any federal question of a kind for which review may be had by writ of error under Jud. Code, § 237, as amended by the Act of September 6, 1916. P. 373. Writ of error to review 40 N. Dak. 69, dismissed.

THE case is stated in the opinion.

*Mr. John L. Erdall,* with whom *Mr. A. H. Bright* and *Mr. H. B. Dike* were on the brief, for plaintiff in error.

*Mr. Alfred Zuger* and *Mr. Andrew Miller,* with whom *Mr. B. F. Tillotson* was on the brief, for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was an action by a railroad company against a shipper, for whom it had carried many carloads of coal between points in the State of North Dakota, to recover for that service a compensation in addition to what was demanded and paid when the service was rendered. Judgment went against the carrier in the court of first instance, and again in the Supreme Court of the State, 40 N. Dak. 69; and this writ of error was sued out on the theory that the judgment upheld and gave effect to a local rate statute which the carrier was contending was repugnant to the due process of law clause of the Fourteenth Amendment. If this theory is not right, the writ of error must be dismissed, for it is without other support. See § 237, Judicial Code, as amended September 6, 1916, c. 448, 39 Stat. 726.

To show what was involved and decided it is necessary to refer with some particularity to a prior litigation out of which the present case arose.

In 1907 the State of North Dakota, by an act of its legislature, prescribed a schedule of maximum rates for carry-

ing coal in carload lots between points within the State, c. 51, Laws 1907; and this and other carriers refused to put the schedule into effect. Suits for injunctions against further disobedience were brought by the State in its Supreme Court, and the carriers defended on the ground that the schedule was confiscatory and therefore in conflict with the due process of law clause of the Fourteenth Amendment. On the hearing that court sustained the schedule and directed that the injunctions issue. 19 N. Dak. 45 and 57. The carriers brought the cases to this court on writs of error and it affirmed the judgments, but did so without prejudice to the right of the carriers to reopen the cases if an adequate trial of the schedule in the future enabled them to prove that it was confiscatory. 216 U. S. 579 and 581. Mandates to that effect issued and the state court modified its judgments accordingly. In obedience to the injunctions the carriers then put the schedule into effect in accordance with local laws (Rev. Code, 1905, §§ 4339–4342); that is to say, they printed and filed coal tariffs based on the maximum rates named in the schedule and gave public notice of their purpose to apply those tariffs. After trying the schedule for a year or more the carriers presented in the state court petitions wherein they told of the trial made, asserted their ability and readiness to prove that the schedule was confiscatory, and prayed permission to do so. The petitions were entertained, proofs were taken, and on a hearing the schedule was sustained and the existing injunctions continued. 26 N. Dak. 438. On writs of error prosecuted by the carriers those judgments were reversed by this court, because the proofs satisfied it that the schedule was not adequately remunerative, and the cases were remanded for further proceedings not inconsistent with the opinion. 236 U. S. 585. On receiving the mandates the state court set aside its judgments and dismissed the cases.

The injunctions in those cases were awarded without

taking any bond and without imposing any terms or conditions other than reserving to the carriers, as before shown, a right to reopen the cases and again attack the schedule after subjecting it to a fair trial. When this right was exercised the carriers did not ask a suspension of the injunctions pending a hearing and decision, and the injunctions remained in force until the cases were dismissed. Neither at the time of the dismissal nor at any prior stage of the proceedings was there any order saving or securing to the carriers a right to demand or collect additional compensation in respect of shipments whereon the schedule rate was demanded and paid while the injunctions were effective.

The shipments as to which additional compensation is sought in the present case were made while the injunction against this carrier was in force;—that is to say, after the schedule was sustained by the first judgments and before it was adjudged unremunerative as a result of the attack made after it had been in effect for a year or more. At the time of the shipments the carrier demanded and the shipper paid the maximum rate named in the schedule, it being the duly filed and published rate. The carrier did not then protest that it was entitled to more; nor did the shipper engage to pay more.

In suing for further compensation the carrier took the position that the schedule was confiscatory and therefore invalid under the Fourteenth Amendment; that the coal was carried at the schedule rate because the injunction in the prior litigation compelled it; that the schedule ultimately was adjudged unremunerative and invalid and the injunction dissolved; and that in these circumstances there arose an obligation on the part of the shipper to pay an additional sum, such as with that already paid would amount to a reasonable compensation.

The Supreme Court of the State put its judgment against the carrier on the following grounds:

1. There was no contract, express or implied, on the part of the shipper to pay any rate other than that shown in the tariff filed and published according to law,—the court saying on this point: "Manifestly, if shippers cannot rely upon the rates as so published and filed, the requirement of publication becomes a mere trap for the unwary. In our judgment, it is wholly improper, in the absence of clear allegations of the rendition of services under a distinct protest, for a court to find that a shipper had, in effect, undertaken conditionally to pay according to a rate different from that published in compliance with the statute."

2. The injunction, in obedience to which the schedule was put into effect and maintained during the period covered by the shipments, was awarded without taking any bond or imposing any terms or conditions for the security of the carrier; and in these circumstances the damage arising from the injunction was *damnum absque injuria*, for which no recovery could be had,—the court citing on this point *Russell* v. *Farley*, 105 U. S. 433, 437–438,[1] and saying: "In reality, the plaintiff's [carrier's] whole case seems properly hinged upon the real meaning and effect of the first decree of the United States Supreme Court. The matter that was settled in that suit [meaning by that decree] was the right of the State to an injunction, and it was found that the State was entitled to the relief sought. Neither the state court nor the United States Supreme Court saw fit to impose any terms or conditions. . . . The error in the plaintiff's [carrier's] contention inheres in the failure to recognize the injunction as being the continuing expression of the court until such time as it

---

[1] See also *Meyers* v. *Block*, 120 U. S. 206, 211; *Lawton* v. *Green*, 64 N. Y. 326, 330; *Palmer* v. *Foley*, 71 N. Y. 106, 108; *City of St. Louis* v. *St. Louis Gaslight Co.*, 82 Mo. 349, 355; *Hayden* v. *Keith*, 32 Minn. 277, 278; *Scheck* v. *Kelly*, 95 Fed. Rep. 941; *Arkadelphia Milling Co.* v. *St. Louis Southwestern Ry. Co.*, 249 U. S. 134, 145.

may be modified or dissolved by a new judgment or decree. During such time, it is impossible that there could have been any other measure of the rights and obligations of the parties than that provided in the decree itself. . . . When that court finally dissolved the injunction, it did not reverse its prior judgment, nor, it seems to us, did it profess to give to the carriers any rights with respect to past shipments that did not exist at the time they were made. These rights were governed by the former decree."

3. The principle that one who has been unjustly enriched at the expense of another may be made to respond to the latter was without application, for here the shipper was responsible in no greater degree for what occurred than was the carrier.

The opinion rendered by that court shows that it did not uphold or give effect to the statutory rate as such, but rested its decision on other independent grounds which appeared to it to preclude a recovery by the carrier. These grounds are broad enough to sustain the judgment, and, if not well taken, are not without substantial support. See *Enterprise Irrigation District* v. *Farmers Mutual Canal Co.*, 243 U. S. 157, 163–165. Some may possibly involve federal questions, but under the jurisdictional statute, as amended in 1916, they are not such as entitle the carrier to a review of the judgment on a writ of error.

*Writ of error dismissed.*