## UNITED MOTORS SERVICE, Inc., v. TROPIC–AIRE, Inc.

### No. 9228.

Circuit Court of Appeals, Eighth Circuit.

Feb. 29, 1932.

Frank A. Whiteley, of Minneapolis, Minn., for appellant.

A. C. Paul, of Minneapolis, Minn., for appellee.

Before KENYON, VAN VALKEN-BURGH, and GARDNER, Circuit Judges.

KENYON, Circuit Judge.

Appellee (hereinafter designated as plaintiff) brought suit on April 28, 1930, in the United States District Court, District of Minnesota, against United Motors Service, Inc., appellant (hereinafter designated as defendant), for infringement of claims 6 and 7 of reissue letters patent No. 17,131, which was a reissue of a patent granted to one Caesar for improvements in heating apparatus for automobiles. With its bill of complaint plaintiff filed a motion for a preliminary injunction. Issue was raised by defendant as to the validity of the letters patent; infringement was denied. No affirmative relief was asked, but it was prayed that the complaint be dismissed at plaintiff's cost.

July 2, 1930, District Judge Molyneaux granted a preliminary injunction upon plaintiff filing a bond in the sum of $25,000 conditioned to save defendant harmless from all loss and damage it might suffer from the issuance of the preliminary injunction if the same should later be held to have been improvidently granted.

July 2, 1930, defendant appealed from the order granting the preliminary injunction to this court.

July 17, 1930, defendant presented a motion to this court to increase the bond to an amount sufficient to adequately protect defendant for any losses it might suffer, which was denied. A motion to increase the bond made to the trial court had been previously denied.

At the time the District Court granted the temporary injunction, it had been held by District Judge Sanborn in the case of Tropic-Aire, Inc., v. Sears, Roebuck & Co., 44 F.(2d) 577, that claims 6 and 7 of the Caesar patent, in so far as they were valid, were so limited by the prior art as not to be infringed under the state of facts presented to the court. The decision of the District Court in that case was appealed to this court, which on September 5, 1930, held that the Caesar patent was invalid for lack of invention. Tropic-Aire, Inc., v. Sears, Roebuck & Co., 44 F.(2d) 580.

October 13, 1930, defendant dismissed its appeal.

On October 15, 1930, on motion of defendant in the District Court, unopposed by plaintiff, the preliminary injunction of July 2, 1930, was dissolved.

November 26, 1930, plaintiff secured an order upon defendant to show cause why the plaintiff's motion to dismiss its bill of complaint upon payment of costs should not be granted. The motion to dismiss set forth the various stages in the progress of the case and stated that defendant had not prayed for any affirmative relief and would not be prejudiced in any substantial right by dismissal of plaintiff's bill, and asked that the same be dismissed without prejudice, the costs to be taxed against the plaintiff.

Defendant responded to the order to show cause on December 22, 1930, and alleged that on December 18, 1930, plaintiff filed a bill in equity in the United States District Court of the Eastern District of New York against E. A. Wildermuth, charging infringement of the said Caesar reissue patent, No. 17,131, and that Wildermuth was an authorized agent of the defendant, and further alleged that by reason of the improvident issue of the preliminary injunction it had been caused great damage and loss in an amount which ought to be ascertained by the court and directed to be paid over by plaintiff, and filed a number of affidavits in support of its position. One of the allegations of the response was: "X. That it is not right and proper in view of the above-recited facts that Plaintiff herein should be permitted to dismiss its bill without prejudice, or that said bill should be dismissed at all, until the loss and damage due the Defendant from the Plaintiff by reason of the improvident grant of said Preliminary Injunction shall be assessed and paid."

Defendant presented a form of order in which it was asked: "That the Defendant recover of the Plaintiff and of the Sureties on the Injunction Bond such damages as Defendant has suffered by reason of the issuance of said Injunction." It was also asked therein that the cause be referred to a special master to consider the evidence of defendant's damage and report to the court what the damage and loss to defendant was by reason of the improvident issuance of the injunction.

February 25, 1931, the trial court made and entered the following decree:

"(Decree, February 25, 1931.)

"United States District Court, District of Minnesota, Fourth Division.

"Tropic-Aire, Incorporated, Plaintiff,
"No. 1679 vs. In Equity.
"United Motors Service, Inc., Defendant.

"This cause came on for hearing December 23, 1930, upon order directed to defendant to show cause why plaintiff's motion to dismiss its bill of complaint herein without prejudice and upon payment of costs, should not be granted; and after argument of counsel for both sides, and consideration, it is

"Ordered, Adjudged and Decreed:

"1. That said cause be and hereby is dismissed without prejudice.

"2. That plaintiff pay the taxable costs of this suit.

"Dated this 25th day of February, 1931.
"Joseph W. Molyneaux, U. S. District Judge."

And with this the court filed the following note: "Note. In this case it is discretionary with the Court to either dismiss the case on the motion of the plaintiff and leave the defendant to recover in an action at law on the injunction bond such damage as he may be entitled to, or to dismiss the action and retain jurisdiction to determine the defendant's damages under the bond," citing a number of cases as sustaining his ruling. The appeal is from this decree.

Defendant contends that the trial court abused its discretion in dismissing plaintiff's complaint without prejudice, and in not retaining jurisdiction until the amount of defendant's damages was ascertained and settled, that in permitting dismissal of plaintiff's complaint the District Court departed from well-established principles of equity, that the procuring of the preliminary injunction by the plaintiff and the procuring of a bond limitation, which plaintiff well knew was entirely inadequate, was unconscionable and ought not to preclude the right of defendant to recover from plaintiff in the equity case its actual damages.

The only question here is whether the District Court abused its discretion in dismissing the cause without prejudice.

The general rule of the federal courts undoubtedly is that ordinarily a plaintiff has a right to dismiss a bill in equity without prejudice before final hearing on payment of costs. There are well-established just exceptions to this rule, to wit, where defendant asks on the pleadings affirmative relief or where he has acquired in the proceedings some substantial right or advantage that he would lose by virtue of the dismissal. There may come a point in a suit where a dismissal by plaintiff would work not a mere hardship but such an injustice to a defendant that a court should not permit it. The controlling case on the right to dismiss is In re Matter of Skinner & Eddy Corporation, Petitioner, 265 U. S. 86, 93, 94, 44 S. Ct. 446, 447, 68 L. Ed. 912. We quote from this opinion of the Supreme Court as follows:

"It is ordinarily the undisputed right of a plaintiff to dismiss a bill in equity before final hearing. * * *

"The right to dismiss, if it exists, is absolute. It does not depend on the reasons which the plaintiff offers for his action. The fact that he may not have disclosed all his reasons, or may not have given the real one, cannot affect his right.

"The usual ground for denying a complainant in equity the right to dismiss his bill without prejudice at his own costs is that the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action. Having been put to the trouble of getting his counter case properly pleaded and ready, he may insist that the cause proceed to a decree."

The exceptions to the rule are clearly stated in Pennsylvania Globe Gaslight Co. v. Globe Gaslight Co. (C. C.) 121 F. 1015, 1016, as follows: "First, where the dismissal would deprive the defendant of some substantial right which has accrued to him since the suit was commenced; second, where the defendant prays for, or is entitled to, some affirmative relief, as, for example, where there is a cross-bill."

In Greenville Banking & Trust Co. et al. v. Selcow et al., 25 F.(2d) 78, 80 (C. C. A. 3d), the court after stating the right refers to the exceptions as follows: "However, where defendants have acquired rights which might be lost, rendered less efficient or prejudiced by dismissal, otherwise than by the annoyance of prospective future litigation, the court in the exercise of a sound discretion may deny the application." These cases are typical of practically all the authorities. See Western Union Tel. Co. et al. v. American Bell Tel. Co. (C. C.) 50 F. 662; City of Detroit v. Detroit City Ry. Co. et al. (C. C.) 55 F. 569; Lindley v. Denver et al. (C. C. A.) 259 F. 83; Pullman's Palace-Car Company v. Central Transportation Company, 171 U. S. 138, 18 S. Ct. 808, 43 L. Ed. 108; McGowan et al.

v. Columbia River Packers' Association et al., 245 U. S. 352, 38 S. Ct. 129, 62 L. Ed. 342; Sauter v. First Nat. Bank of Philadelphia et al. (C. C. A.) 8 F.(2d) 121; Scholl Mfg. Co., Inc., v. Rodgers (C. C. A.) 51 F. (2d) 971.

■ There may be gathered from the plethora of language employed in the cases in drawing fine distinctions a simple rule, viz., if it is inequitable to permit the dismissal of an equity case it should not be done. Whether it is inequitable is to be determined by the trial court in the exercise of a sound discretion. That discretion is reviewable only if there has been an abuse thereof.

The question here is reduced to a rather narrow compass. No affirmative relief was asked in defendant's pleading prior to the time of the motion to dismiss, so that proposition is out of the discussion, leaving the question: Did defendant lose any substantial right by the dismissal? If it did not there could be no legal prejudice. It claims it lost (1) an alleged right to have its damages assessed in the suit in equity; (2) the right to have the suit dismissed on its merits instead of being dismissed without prejudice. As to the first point defendant argues that its damages are far in excess of the amount of the bond, and that the District Court should have assessed in the equity action the full damages suffered by it even if they exceeded the amount of the bond, and that in being relegated to a suit on the bond defendant lost the right to recover its full damages.

■ We are unable to agree with the contention that the District Court could have assessed damages to defendant in excess of the amount of the bond. The rule is well settled otherwise in the courts of the United States. The original leading case on this subject is Russell v. Farley, 105 U. S. 433, 437, 438, 26 L. Ed. 1060. While a considerable part of the opinion is mere dictum, it seems to have been followed as a sound statement by a long line of federal authorities. The court there said: "The question then arises whether the Circuit Courts have any power to make a decree on the subject of damages arising from an injunction, where an injunction bond has been required. Where no bond or undertaking has been required, it is clear that the court has no power to award damages sustained by either party in consequence of the litigation, except by making such a decree in reference to the costs of the suit as it may deem equitable and just. * * * And if the legal right is doubtful, either in point of

law or of fact, the court is always reluctant to take a course which may result in material injury to either party; for the damage arising from the act of the court itself is damnum absque injuria, for which there is no redress except a decree for the costs of the suit, or, in a proper case, an action for malicious prosecution. To remedy this difficulty, the court, in the exercise of its discretion, frequently resorts to the expedient of imposing terms and conditions upon the party at whose instance it proposes to act. The power to impose such conditions is founded upon, and arises from, the discretion which the court has in such cases, to grant, or not to grant, the injunction applied for. It is a power inherent in the court, as a court of equity, and has been exercised from time immemorial."

In Meyers v. Block, 120 U. S. 206, 211, 7 S. Ct. 525, 528, 30 L. Ed. 642, damages were sought in an action at law upon the injunction bond. While this was an action at law, the language of the court is broad enough to cover the whole question of the liability of a complainant in equity for damages caused by the wrongful issuance of a preliminary injunction regardless of whether the damages are assessed in the equity suit proper or in a subsequent action at law. This was a Louisiana case and under the law of Louisiana damages could be recovered for suing out an injunction without just cause, independently of a bond. The court said, referring to the law of Louisiana and the right to recover independently of a bond: "But this cannot be done in the United States courts. Without a bond, no damages can be recovered at all. Without a bond for the payment of damages or other obligation of like effect, a party against whom an injunction wrongfully issues can recover nothing but costs, unless he can make out a case of malicious prosecution. It is only by reason of the bond, and upon the bond, that he can recover anything. When, therefore, the condition of the bond in these cases declares that the obligors will pay such damages as the obligee may recover against them, it must mean that they will pay such damages as he may recover by a suit on the bond itself."

Lawrence et al. v. St. Louis-San Francisco Railway Co., 278 U. S. 228, 233, 49 S. Ct. 106, 108, 73 L. Ed. 282, is a case where an interlocutory decree enjoined a state commission from carrying out an order restraining a railway company from removing shops and a division point from one place to another. The question of restitution is involved

in this case also, which we shall refer to later. The court says: "If it had not, when entering the interlocutory decree, required that bond be given, no damages could have been recovered on the dissolution of the injunction."

Minneapolis, St. Paul & Sault Ste. Marie Railway Company v. Washburn Lignite Coal Company, 254 U. S. 370, 41 S. Ct. 140, 65 L. Ed. 310, deals with an injunction with reference to putting certain schedules into effect. There was no bond imposing any terms or conditions for the security of the carrier. The court holds that the damage arising from the injunction was damnum absque injuria, and that there could be no recovery therefor, referring to Russell v. Farley, 105 U. S. 433, 26 L. Ed. 1060. In Corpus Christi Gas Co. v. City of Corpus Christi (D. C.) 36 F.(2d) 972, 973, the court says that: "Except in Louisiana, it is the rule generally in the United States that it is the order of the judge fixing the conditions for granting the injunction, and not the suing of it out, which is the spring of liability." This court in Berger Mfg. Co. v. Huggins et al., 242 F. 853, 857, said: "In the United States courts the damages sustained by one enjoined, where no bond is given, cannot be recovered from the party obtaining the injunction, unless the defendant can make out a case of malicious prosecution." The rule is certainly well established in the federal courts that liability is fixed by and limited in case of the improvident issuance of an injunction to the amount of the required bond, and that without a bond defendant can recover only costs, unless a case of malicious prosecution is shown. Scheck v. Kelly (C. C.) 95 F. 941; Cimiotti Unhairing Co. et al. v. American Fur Refining Co. et al. (C. C.) 158 F. 171; Woolfolk v. Jones (D. C.) 216 F. 807; Minneapolis, St. Paul & Sault Ste. Marie Railway Company v. Washburn Lignite Coal Company, 254 U. S. 370, 41 S. Ct. 140, 65 L. Ed. 310; Tenth Ward Road Dist. No. 11 of Avoyelles Parish v. Texas & P. Ry. Co. et al. (C. C. A.) 12 F.(2d) 245, 45 A. L. R. 1513. The cases cited by defendant furnish basis for no other rule.

■ Mica Insulator Co. v. Commercial Mica Co. (C. C. A.) 157 F. 92, 93, 94, 95, might appear to be an authority otherwise, but on close analysis it is quite clear that it is not. The court there holds that a formal injunction bond was not an indispensable prerequisite to the determination of damages on the dissolution of the injunction, but there the order of the court provided that "complainant pay the defendant such resulting damages as it may sustain in case it be finally decided that said injunction ought not to have been granted." It holds that the court has power at the granting of the injunction to impose as a condition that complainant shall pay any damages sustained by defendant if it turns out that the injunction was improvidently granted, and that if complainant acts under the order of the court he is bound by the condition. The court said: "It is through no fault of the defendant that it is before the court on this motion without a formal bond. It relied upon the order of court, which was, I think, clearly either a condition upon which the injunction would be issued, or, having been issued, continued in force. Not only that, it imposed upon the complainant an obligation to make good to the defendant any damages sustained within its terms in case it was continued in force. The complainant accepted and acted under it. To hold otherwise under the circumstances of this case would be most inequitable. When complainant proceeded to avail itself of the injunction, it became obligated to make good to defendant its damages in the premises; so that the case comes wholly within the foregoing decisions of the Supreme Court." This case does not impair in any way the proposition that when neither an injunction bond nor a similar undertaking or equivalent has been required by the court there can be no assessment of damages for the improvident issuance of the injunction either in the equity suit proper or in a subsequent action at law unless a case for malicious prosecution can be made out, and when a formal injunction bond alone is required by the court, as in the instant case, the amount of the bond is the maximum amount of damages which can be assessed, unless, as we have pointed out, there is a case for malicious prosecution. The philosophy of the matter is that an error in granting an injunction is an error of the court, for which there is no recovery in damages unless the same is sufficiently intentional as to be the basis of a suit for malicious prosecution, otherwise the damage is damnum absque injuria. The court in granting an injunction has a right to make such restrictions and limitations as it deems just and hence can provide for a bond or other adequate method of protecting the party against whom the injunction is granted in recovering damages if it be improvidently issued.

■■ Defendant, realizing undoubtedly the unsoundness of its position as to recovery of

484

damages in excess of the amount of the bond, rather ingeniously insists that the damages asked are in effect a restitution in kind and hence not limited by the amount of the bond, that the profits which it would have had if the injunction had not been issued are in the hands of the plaintiff, and that regardless of the bond, it is entitled to have such profits restored to it. It relies largely upon Northwestern Fuel Company v. Brock, 139 U. S. 216, 11 S. Ct. 523, 35 L. Ed. 151, and Arkadelphia Milling Company v. St. Louis Southwestern Railway Company et al., 249 U. S. 134, 39 S. Ct. 237, 63 L. Ed. 517, to sustain its theory. It insists there is no particular difference between the receipt by plaintiff of moneys belonging to the defendant paid directly by defendant to the plaintiff, and of moneys belonging to the defendant as profits paid to the plaintiff by defendant's customers. The court in Northwestern Fuel Company v. Brock, 139 U. S. 216, 11 S. Ct. 523, 35 L. Ed. 151, was talking about restitution and not about damages. Both in Arkadelphia Milling Company v. St. Louis Southwestern Railway Company et al., 249 U. S. 134, 39 S. Ct. 237, 63 L. Ed. 517, and Lawrence et al. v. St. Louis-San Francisco Railway Company, 278 U. S. 228, 49 S. Ct. 106, 73 L. Ed. 282, the Supreme Court maintained a clear distinction between the question of restitution and that of damages—both were involved in each of the cases. The two are regarded as entirely different by all the courts. In Arkadelphia Milling Company v. St. Louis Southwestern Railway Company et al., 249 U. S. 134, 147, 39 S. Ct. 237, 242, 63 L. Ed. 517, the court said: "But it seems to us that the rights of the present shippers were so clear as to make an allowance of damages upon the injunction bonds and restitution upon the reversal of the decrees manifestly their due."

It is apparent the court was dealing both with damages and restitution, separate matters. In Lawrence et al. v. St. Louis-San Francisco Railway Company, supra, where both damages and restitution were involved, the court, pointing out that if a bond had not been required no damages could have been recovered, said, page 233 of 278 U. S., 49 S. Ct. 106, 108: "But it was clear that, upon final hearing, the railway might prove that it was entitled to a permanent injunction; and the District Court was not obliged to order restitution meanwhile. If it had not, when entering the interlocutory decree, required that bond, be given, no damages could have been recovered on the dissolution of the injunction."

In Tenth Ward Road Dist. No. 11 of Avoyelles Parish v. Texas & P. Ry. Co. et al. (C. C. A.) 12 F.(2d) 245, 247, 248, 45 A. L. R. 1513, the distinction between damages and restitution is made clear. Damages were denied because there had been no injunction bond. Restitution was denied for the reason that the facts before the court did not present a case for the application of that equitable doctrine. The court said: "Appellant's original bill did not rely on malicious prosecution but upon the doctrine of restitution. It contended that the fruits of an erroneous decree, received by the party in whose favor it was rendered, will be ordered restored (especially in a court of equity), when the decree has been reversed, and that that principle is applicable to this case. Restitution of the amount received under a decree, afterwards reversed, will be ordered in equity, and will sustain a cause of action at law. But the condition of the restoration is always that the party against whom restitution is sought shall have received, by virtue of the decree, what he is asked to restore. * * * There is no support in reason or authority for an extension of the doctrine of restitution to cover an award of damages, which the restorer never received, and so in no true sense could restore."

See, also, Baltimore & Ohio Railroad Company et al. v. United States et al., 279 U. S. 781, 49 S. Ct. 492, 73 L. Ed. 954; St. Louis Southwestern Ry. Co. of Texas v. Consolidated Fuel Co. (C. C. A.) 260 F. 638; Kansas City Southern Ry. Co. et al. v. Southern Trust Co. et al. (C. C. A.) 279 F. 801. We find no case as authority for the proposition that damages in the guise of "restitution" may be assessed in excess of the injunction bond. There is nothing certain as to the amount of damages suffered by defendant by reason of the improvident granting of the preliminary injunction. Nothing was taken from it by the injunction and given to plaintiff. We see no room for the application of the doctrine of restitution here. As under the holdings practically of all the federal and most of the state courts the damages for the improvident issue of an injunction cannot be assessed whether in an equity suit proper or in an action at law in an amount in excess of the injunction bond, it seems clear that the District Court did not deprive defendant of any right to damages by permitting a dismissal of the case.

█ Defendant argues that it had the *right* to have the trial court assess its damages in the equity action. While the *power* unques-

tionably exists in the trial court to assess such damages, it was clearly discretionary with that court to retain the case and in an ancillary proceeding as incident to the main case determine such damages or leave the parties to an action at law. There is no duty on the trial court to wind up the matter of damages in the equity suit. In the leading case, Russell v. Farley, supra, the court said with reference to this, page 446 of 105 U. S., 26 L. Ed. 1060:

"But whilst the court may have (we do not now undertake to decide that it has) the power to assess the damages, yet if it has that power, it is in its discretion to exercise it, or to leave the parties to an action at law. No doubt in many cases the latter course would be the more suitable and convenient one.
* * *

"But the appellants contend that, even if the court had the power to pass upon the question at all, its decision was erroneous, and ought to be reversed on the merits. On this point, the judgment of the court approaches so near to an exercise of discretion, that we should require a very clear case to be made in order to induce us to reverse it. The conduct of the parties and the course of litigation in the court below pass so directly under the inspection of that court, as to give it many advantages which no other court can possess, for forming a correct decision on the question, whether any extra damages should be allowed for the issuance of the injunction."

In Baker & Bennett Co. v. N. D. Cass Co. et al., 224 F. 439, 440 (C. C. A. 2d), the appellate court refused to interfere with the discretion exercised by the trial court in refusing to assess the damages in the equity suit as demanded by defendant. It held that on dissolution of the preliminary injunction, for which a bond was given, the court had the discretion to determine the liability thereon or to leave the defendant to his remedy by an action at law. We quote from that decision as follows: "We do not understand that Judge Lacombe, in denying the petition for the appointment of a special master, intended to hold that the defendants were not entitled to recover at all, but only to exercise the discretion that lay in him to say whether the liability upon the bond should be determined in an ancillary proceeding in this cause or in an independent action at law."

In Pease v. Rathbun-Jones Eng. Co., 243 U. S. 273, 279, 37 S. Ct. 283, 286, 61 L. Ed. 715, Ann. Cas. 1918C, 1147, the Supreme Court in discussing whether a court of equity had jurisdiction to render summary judgments on a bond because there might be an adequate remedy at law, and holding that such objection is not good and that a court of equity having complete jurisdiction will dispose of all incidents to the case and end further litigation, says: "The objection that a court of equity has no jurisdiction because there is an adequate remedy at law on the bond is not well taken. A court of equity, having jurisdiction of the principal case, will completely dispose of its incidents and put an end to further litigation." The latter sentence is of course merely dictum.

On the general question of the power of courts of equity to retain the case and assess damages, see Lea et al. v. Deakin (C. C.) 13 F. 514; Coosaw Min. Co. v. Farmers' Min Co. et. al. (C. C.) 51 F. 107; Tyler Min. Co. et al. v. Last Chance Min. Co. (C. C. A.) 90 F. 15; Leslie v. Brown et al. (C. C. A.) 90 F. 171; Cimiotti Unhairing Co. et al. v. American Fur Refining Co. et al. (C. C.) 158 F. 171; Nashville C. & St. L. Ry. v. Railroad Commission (C. C.) 171 F. 223; Mississippi Valley Fuel Co. et al. v. Watson Coal Co. (C. C. A.) 202 F. 122; Williams v. O'Toole (C. C. A.) 211 F. 484; Bellamy v. St. Louis, I. M. & S. Ry. Co. (C. C. A.) 220 F. 876; Baker & Bennett Co. v. N. D. Cass Co. et al. (C. C. A.) 224 F. 439; United States Fidelity & Guaranty Co. v. Burke et al. (C. C. A.) 238 F. 881, Ann. Cas. 1918C 93; Martin v. Barth et al. (C. C. A.) 25 F. (2d) 95; Owl Creek Coal Co. v. Big Horn Collieries Co. (D. C.) 36 F. (2d) 485; Pease v. Rathbun-Jones Eng. Co., 243 U. S. 273, 37 S. Ct. 283, 61 L. Ed. 715, Ann. Cas. 1918C, 1147.

Many courts of original jurisdiction have laid down rules with reference to this matter and have regarded it as the better practice for the court in the equity suit to determine the damages. For instance, in Owl Creek Coal Co. v. Big Horn Collieries Co. (D. C.) 36 F. (2d) 485, the court reviews many of the federal decisions upon the subject and states that defendant may in an ancillary proceeding summarily enforce a bond against the surety, and that the defendant ordinarily will not be remitted to his remedy at law. Same doctrine Lea v. Deakin (C. C.) 13 F. 514.

We think there can be no well-considered authorities cited holding that under the circumstances such as here presented there was no discretion in the trial court to hold the case and assess the damages or to relegate defendant to an action at law on the bond and

that it must prior to granting dismissal settle the question of damages. It makes no difference that certain courts have expressed their opinion that discretion should be exercised in one direction rather than the other or that perhaps better reasons appear for choosing the alternative followed than may be available in the instant case. There is no particular reason why defendant should have the right to have the damages assessed in the equity suit instead of in an action at law because he may consider one alternative better for it than the other. While a master in equity and a jury at law might differ as to the damages, the proceedings are supposedly equally effective. The argument that greater damages could be assessed in the equity suit proper we have shown to be unsound. The refusal of the District Court to assess damages under the injunction bond in the equity suit proper as requested by the defendant was not an abuse of discretion.

■ The other ground urged as showing an abuse of discretion is that defendant was entitled to have the case dismissed on the merits; that by the dismissal without prejudice plaintiff was given the right to a second day in court to the prejudice of defendant. What defendant really lost in this case was the advantage that would have come from a dismissal on the merits, which would have given it a certain freedom from extended vexatious litigation.

Where a defendant is entitled to have a case dismissed on its merits and where it is apparent that another suit is to be brought in another jurisdiction, it would seem a dismissal without prejudice would cause a defendant to lose a possible freedom from subsequent action and the annoyance of a second suit, and that such is a substantial right. Such situation ought to be considered by a court in exercising its discretion. It is the overwhelming voice of authority, however, that the mere annoyance of another action cannot be considered such prejudice as to require a court to overrule a plaintiff's request to dismiss the action. In Pullman's Palace-Car Co. v. Central Transportation Co., 171 U. S. 138, 146, 18 S. Ct. 808, 811, 43 L. Ed. 108, the Supreme Court said: "Leave to dismiss a bill is not granted where, beyond the incidental annoyance of a second litigation upon the subject-matter, such action would be manifestly prejudicial to the defendant." Again: "From these cases we gather that there must be some plain, legal prejudice to defendant to authorize a denial

of the motion to discontinue. Such prejudice must be other than the mere prospect of future litigation rendered possible by the discontinuance. If the defendants have acquired some rights which might be lost or rendered less efficient by the discontinuance, then the court, in the exercise of a sound discretion, may deny the application." And in Re Skinner & Eddy Corp., supra, referring to the exception to the rule as to the right to dismiss, the Supreme Court said: "The exception was where a dismissal of the bill would prejudice the defendants in some other way than by the mere prospect of being harassed and vexed by future litigation of the same kind." In Lindley v. Denver, 259 F. 83, 84 (C. C. A. 6th), that Court said: "It undoubtedly has been the settled rule of the federal courts in equity that, where no claim had been made for cross-relief, plaintiff had an absolute right to dismiss his bill without prejudice, at any time before the case was ripe for decision (if not even later), and that the expense incurred by defendant in preparing for trial and the resulting delay did not alone constitute good cause for refusing such dismissal." In Goldstein v. Philadelphia & Reading Coal & Iron Co., 17 F. (2d) 482, this court draws a distinction between the defendant being prejudiced and merely being annoyed by another suit. On the general subject, see Western Union Tel. Co. et al. v. American Bell Tel. Co. (C. C.) 50 F. 662; City of Detroit v. Detroit City Ry. Co. et al. (C. C.) 55 F. 569; Gilmore et al. v. Bort et al. (C. C.) 134 F. 658; Allington et al. v. Shevlin-Hixon Co. (D. C.) 2 F.(2d) 747; Dooley et al. v. Fritz (D. C.) 38 F.(2d) 123.

We refer to a few cases where the courts discussed some of the reasons for refusing dismissals. In Hines et al. v. Martin (C. C. A.) 286 F. 653, 656, 657, the court said: "The defendants did not show that they would have been deprived of any right against the plaintiff by the dismissal of the case, but only that they might be subjected to the annoyance of another suit. This alone is insufficient to entitle defendants to object to the discontinuance of a suit in equity by voluntary dismissal by the plaintiff without prejudice. The case is wholly unlike one where large expense had been gone to in taking proof in a cause, or where the defendant has obtained a favorable report from a master in chancery, or other like cases where some peculiar hardship would befall the defendant." In Smith et al. v. Carlisle (C. C. A.) 228 F. 666, 667, 668, the master had filed

a report in favor of the defendant and the trial court had permitted plaintiff to dismiss his bill without prejudice. The Circuit Court of Appeals (Fifth Circuit) reversed its action and said: "We do not think that with any plausibility it can be contended that it is not manifestly prejudicial to a defendant to permit the complainant to dismiss his bill without prejudice after the filing of such a report of a master in favor of the defendant as was made in this case. Such a discontinuance of the case involves more for the defendant than the incidental annoyance of a second litigation upon the same subject-matter. It deprives him of the benefit of findings in his favor."

There have been a great many patent cases where the attempt has been made to dismiss bills without prejudice, and one in particular which should appeal rather strongly to the Court exercising discretion—that is, A. C. Gilbert Co. v. United Electrical Mfg. Co. (D. C.) 33 F.(2d) 760, 761, 762, where the court said: "The defendant opposes the motion to dismiss without prejudice, and insists that, in view of the conduct of the plaintiff in publishing to the trade, including the customers of the defendant, the charges of infringement and notices of suit already mentioned, it would be unfair and inequitable to the defendant to now permit the plaintiff to discontinue this suit without prejudice and to thus leave these charges in the minds of the public without an opportunity on the part of the defendant to meet and disprove such charges. I cannot avoid the conclusion that the defendant is correct in this contention. It is settled law that a plaintiff may not dismiss a bill without prejudice, unless by permission of the court in which such bill has been filed, and that if, in the exercise of a sound discretion, such court is satisfied that under the particular circumstances involved such a dismissal would be inequitable, and would wrongfully prejudice the defendant beyond merely subjecting him to the annoyance of a second suit, such permission will be denied to the plaintiff." In Bassick Mfg. Co. v. Seltzer et al. (D. C.) 37 F.(2d) 579, a patent infringement suit, a motion of plaintiffs to dismiss without prejudice was denied and the bill dismissed absolutely. This was after final hearing and after the case had been submitted for consideration to the court. Naturally that was too late. In Electrical Accumulator Co. v. Brush Electric Co. (C. C.) 44 F. 602, the right of plaintiff to dismiss was denied for the reason that under its answer the defendant was held entitled to affirmative relief in the way of a declaration of the invalidity of plaintiff's patent. In Thomson-Houston Electric Co. v. Holland et al. (C. C.) 160 F. 768, the court said: "The general rule is, stated in the form most favorable to the defendants, that a motion to discontinue without prejudice upon payment of costs will be allowed where no rights have attached to the defendants, as by a cross-bill, or where no testimony has been taken. I know of no case where it is held, and I can conceive of no reason why it should be held, that where no testimony has been taken, and no cross-bill filed, the complainant would not have the right to dismiss his case. To hold otherwise would be to say that the courts are anxious to encourage litigation."

Among these cases we find none of particular comfort to defendant except Young et al. v. Southern Pac. Co. 25 F.(2d) 630 (C. C. A. 2d). In this case a suit instituted in the state court was transferred to the federal court, and it was held that plaintiff was not entitled to an order dismissing the complaint without prejudice where the application to discontinue was merely for the purpose of a second suit in the state court and not with the idea of terminating the litigation. The court seeks to distinguish In re Skinner & Eddy Corp., supra. There is much of sound reasoning in the opinion in this case. Some equity rules of the Southern and Eastern District Courts of New York were involved which authorized the court when justice required to refuse to permit a plaintiff to discontinue. The court said [25 F.(2d) 631]: "The application to discontinue was not with an idea of ending the litigation, but concededly for the sole purpose of a second litigation upon the subject-matter which would manifestly be annoying and might be prejudicial to the appellant. Leave to dismiss a bill and discontinue the action is not granted where such promised second litigation would constitute an annoyance and an avoidance of that which had been determined." Judge Hand in a concurring opinion says, page 632 of 25 F.(2d): "Ordinarily the mere fact that a plaintiff prefers the state courts ought not to prevent his discontinuing his suit (Harding v. Corn Products Refining Co., 168 F. 658 [C. C. A. 7]); one court is as good as another. But the situation changes when there is substantial doubt whether the courts will not apply different rules, and when the plaintiff's purpose is so to maneuver the litigation that the defendant will lose his existing advantage. The loss

of the federal forum then becomes a grave prejudice, quite as much as, and indeed more than, the expense and delay in trying the suit up to decree, or even the failure of a cross-bill." The question there of the loss of the federal forum was evidently persuasive with Judge Hand. The opinion seems to be somewhat in conflict with In re Skinner & Eddy Corp., supra, and that would prevent us following it.

There is danger of an appellate court substituting its judgment as 'to what should have been done in a situation such as here presented instead of realizing that the exercise of the discretion is for the trial court. In American Grain Separator Co. et al v. Twin City Separator Co., 202 F. 202, 206, this court said: "The granting or dissolution of an interlocutory injunction rests in the sound judicial discretion of the court of original jurisdiction, and, where that court has not departed from the rules and principles of equity established for its guidance, its orders in this regard may not be reversed by the appellate court without clear proof that it abused its discretion. The question is not whether or not the appellate court would have made or would make the order. It is to the discretion of the trial court, not to that of the appellate court, that the law has intrusted the power to grant or dissolve such an injunction, and the question here is: Does the proof clearly establish an abuse of that discretion by the court below?" Of course judges of courts of original jurisdiction are just as anxious that no legal injustice be done as is the appellate court. They are on the ground and have more intimate knowledge of the situation than an appellate court has. Ordinarily they would not permit dismissal of a case if thereby an injustice were done to defendant. They are the ones to determine that question in the exercise of a sound discretion. This discretion is a legal discretion, not merely an arbitrary one.

If the court had refused to permit a dismissal without prejudice and had dismissed the case on the merits, we could not have said it abused its discretion. The question for this court is not whether discretion was wisely exercised, but whether it was abusively exercised. We should be very clear in our conviction that the trial court abused its discretion in order to reverse its action. We do not have that abiding conviction.

There should be some presumption in favor of the correctness of the trial court's action. Its decree is affirmed.